# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-2909

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | Appeal from the United States |
| | * | District Court for the |
| v. | * | District of South Dakota |
| | * | |
| Basil Loud Hawk, | * | [TO BE PUBLISHED] |
| | * | |
| Appellant. | * | |

_____

Submitted: February 26, 2001

Filed: April 3, 2001

_____

Before WOLLMAN, Chief Judge, HANSEN, and BYE, Circuit Judges.

_____

BYE, Circuit Judge.

Basil Loud Hawk pleaded guilty to two counts of second-degree murder in Indian country, and a single count of using a firearm while committing a violent crime. At sentencing, the district court[1] departed upward from the prescribed Sentencing Guidelines range. The court also imposed a consecutive sentence on the firearm count. Loud Hawk challenges both these decisions on appeal. We affirm.

_____

[1]The Honorable Richard H. Battey, Senior United States District Judge for the District of South Dakota.

# I

On the night of January 4, 1999, Loud Hawk was staying at his parents' home near Oglala, South Dakota on the Pine Ridge Indian Reservation. He asked his mother for permission to use a car to visit his girlfriend, but his mother refused. Loud Hawk then shot his mother in the back as she assisted her six-year old grandson, Matthew, in the bathroom. After she fell, Loud Hawk rolled her onto her back and fired an additional shot into her heart. Loud Hawk put Matthew, his nephew, into a bedroom where two of his young nieces were sleeping.

Loud Hawk turned out the house lights and waited for his father to return home. When his father arrived, Loud Hawk shot him in the leg. As his father lay on the floor reaching for Loud Hawk's gun, Loud Hawk shot his father three more times at close range. Matthew apparently left the bedroom and witnessed this killing as well.

After killing his parents, Loud Hawk dragged their bodies into the backyard. He placed the bodies under an old bathtub and lit them on fire. Loud Hawk later attempted to clean the mess inside the home. He scrubbed the bathroom and placed bloody clothes and sheets into the laundry; he also patched bullet holes in the wall with putty.

Loud Hawk's sister contacted authorities the next morning when she was unable to reach her parents by telephone. Reservation police visited the home and discovered the crime. In the house, officers uncovered nine firearms, as well as a magazine entitled *Bizarre Murders* next to Loud Hawk's bed. Officers also discovered a metal folding chair and a fire poker by the charred remains of the bodies and the bathtub. Loud Hawk made incriminating statements, but he claimed that he would "beat the rap" because he was insane.

The government charged Loud Hawk with two counts of second-degree murder in Indian country, 18 U.S.C. §§ 1111 & 1153(a), and two related counts of using a

firearm during the commission of a violent crime, 18 U.S.C. § 924(c).  He negotiated a plea agreement with the government in which he agreed to plead guilty to both murder charges and to one of the two firearm charges.  At sentencing, witnesses rendered impassioned testimony both about the brutality of Loud Hawk's deeds, and about the difficulties Loud Hawk had faced during his young life.  While many of Loud Hawk's brothers and sisters urged the court to sentence him harshly, other family and friends requested a lenient punishment.  After calculating the Guideline sentence, the district court elected to depart upward 10 levels under U.S.S.G. § 5K2.8 (from level 32 to level 42 within Criminal History Category II) due to the heinous nature of the crime.  The court then recalculated a Guideline range of 360 months to life imprisonment, and sentenced Loud Hawk to concurrent 60-year terms on the two murder counts.  Because Loud Hawk had discharged a firearm while committing the murders, the court also imposed a consecutive 10-year sentence.  See 18 U.S.C. § 924(c)(1)(A)(iii).

II

Loud Hawk now challenges his sentence in two respects.  First, he contends that the district court abused its discretion in departing upward 10 levels in sentencing him for the crimes of murder.  Second, he argues that he should not have been sentenced to a consecutive 10-year term on the firearm count.

A

Section 5K2.8 permits a district court to depart upward from the recommended Guideline sentence range "[i]f the defendant's conduct was unusually heinous, cruel, brutal, or degrading to the victim."  U.S.S.G. § 5K2.8 (2000).  The section further elaborates that "[e]xamples of extreme conduct include torture of a victim, gratuitous infliction of injury, or prolonging of pain or humiliation."  Id.

We review for abuse of discretion a district court's decision to depart upward under § 5K2.8. <u>United States v. Johnson</u>, 144 F.3d 1149, 1150 (8th Cir. 1998). In evaluating a sentencing court's exercise of discretion, "we respect the district court's superior feel for the case." <u>United States v. Perkins</u>, 929 F.2d 436, 438 (8th Cir. 1991) (internal quotation omitted).

Given the brutal and inhumane method in which Loud Hawk stalked and killed his parents, burned their bodies, and exposed a six-year-old child to the murders, we find no abuse of discretion in the district court's upward departure. In prior cases, we have affirmed substantial upward departures involving § 5K2.8. <u>See, e.g.</u>, <u>United States v. Lewis</u>, 235 F.3d 394, 396-97 (8th Cir. 2000) (per curiam) (affirming 12-level upward departure based in part upon § 5K2.8); <u>United States v. Grey Cloud</u>, 90 F.3d 322, 322-23 (8th Cir. 1996) (per curiam) (affirming upward departure from 15-20 year range to life imprisonment based partly on § 5K2.8). Though a 10-level upward departure under § 5K2.8 approaches the outer bound of a sentencing court's discretion, the barbaric circumstances of this case warrant significant punishment.

Loud Hawk argues that the court abused its discretion in departing upward by failing to consider his recent diagnosis of paranoid schizophrenia and his history of drug abuse. We recognize the severity of Loud Hawk's problems, but we are not persuaded by his argument. Section 5K2.8 omits mention of mental illness, substance abuse, or other ameliorative circumstances, and, by its own terms, measures only the extreme character of a defendant's criminal conduct. <u>See</u> <u>United States v. Roberson</u>, 872 F.2d 597, 603 (5th Cir. 1989). Loud Hawk's psychological condition is therefore irrelevant to the departure analysis under § 5K2.8. The Guidelines also forbid reduced punishment for defendants who abuse controlled substances. <u>See</u> U.S.S.G. § 5H1.4. Hence, the district court properly declined to weigh Loud Hawk's mental health and substance abuse problems in the context of its § 5K2.8 upward departure.

Counsel also urged the district court to depart *downward* to reflect Loud Hawk's alleged mental health problems. Tr. 41. We regard counsel's request as a motion for downward departure under U.S.S.G. § 5K2.13 (permitting a court to reduce a defendant's sentence because of diminished capacity), though counsel's argument was not denominated as such. Loud Hawk has apparently abandoned this argument on appeal as his brief discusses only the extent of the district court's *upward* departure. Even if the argument had been preserved, however, we plainly lack the power to review the district court's decision because the court understood its power to depart. See United States v. Jones, 145 F.3d 959, 965 (8th Cir. 1998).

B

Turning to the firearm count, Loud Hawk claims that § 924(c) forbids the imposition of a consecutive sentence when a defendant already faces a greater punishment for the underlying, or predicate, crimes. We recently rejected this interpretation of § 924(c), United States v. Alaniz, 235 F.3d 386, 387-89 (8th Cir. 2000), and counsel properly acknowledged at oral argument that Alaniz controls the result in the present case. We therefore decline to elaborate further on this point.

III

We affirm the judgment and sentence of the district court in all respects.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-5-