# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-1131

_____

United States of America,      *

        *

     Appellee,         *

        *   Appeal from the United States

v.            *   District Court for the

        *   District of South Dakota.

LaVonne Jean Leaf,       *

        *

     Appellant.       *

_____

Submitted: August 21, 2002

Filed: October 1, 2002

_____

Before WOLLMAN, RILEY, and MELLOY, Circuit Judges.

_____

RILEY, Circuit Judge.

LaVonne Jean Leaf (Leaf) pled guilty to one count of voluntary manslaughter, a violation of 18 U.S.C. §§ 1112 & 1153. In sentencing Leaf, the district court[1] departed upward the equivalent of four criminal history categories based on uncharged criminal conduct. On appeal, Leaf challenges the facts relied upon to support the departure, the extent of the departure, and the constitutionality of using uncharged criminal conduct to enhance her sentence. We affirm.

_____

[1]The Honorable Charles B. Kornmann, United States District Judge for the District of South Dakota.

## I. BACKGROUND

On December 27, 2000, Leaf had an argument with her boyfriend, Thomas Wells (Wells). Later that day, while Wells was walking alongside a road, Leaf ran over him with her van and killed him. Leaf was charged with second degree murder, and she entered a plea of guilty to manslaughter. The presentence investigation report (PSR) assessed two criminal history points, one point for a 1993 drug conviction in North Dakota and one point for a 2000 DUI conviction in South Dakota. These two criminal history points placed Leaf in criminal history category II.

The PSR did not assess points for certain criminal conduct Leaf had committed in the past. According to the PSR, Leaf had also run over and fatally injured a previous boyfriend, Brian Zephier, in 1991, but had not been charged. Between 1990 and the day she killed Wells in late 2000, Leaf was arrested eighteen times on the Standing Rock Sioux Reservation. Six of those arrests resulted in convictions for crimes such as disorderly conduct, resisting arrest, and drug possession. While she was detained awaiting sentencing in this case, Leaf also received three reprimands for aggressive or threatening behavior toward other inmates. The PSR did not suggest this conduct or any other factor might warrant a departure from the guidelines.

After disclosure of the PSR, the government filed a sentencing memorandum notifying Leaf of its intent to seek an upward departure. In its memorandum, the government alleged that Leaf has a history of using automobiles violently. The government alleged that: (1) Leaf ran over and killed Zephier in 1991; (2) Leaf attempted to run over Zephier on a previous occasion before he was fatally struck in 1991; (3) Leaf unsuccessfully attempted to run over Wells a month before his death; and (4) Leaf attempted to run over and stab a woman named Jacqueline Little Dog (Little Dog) in 2000. Responding to these allegations, the district court issued a memorandum stating it would consider departing upward, based on "prior similar adult criminal conduct in using a motor vehicle as a weapon."

The district court conducted a sentencing hearing that began on October 1, 2001, and continued on parts of three more days in October and December 2001. On the first day of the hearing, Wells's sister, Beatrice Howard, described a conversation she had with Wells the week before he died, in which Wells told her that Leaf had tried to run him over with a van. Steve Makes Him First (Makes Him First) testified that, in 1991, Leaf told him she killed Zephier by running over him on the road and then backing over him. When the prosecutor asked Makes Him First if he had ever been assaulted by Leaf, Makes Him First said he had and explained that Leaf had used a knife in the assault, and that he suffered cuts on his hand while he tried to take the knife away from her. Little Dog testified that about two weeks before Zephier's death, Zephier ran out of an alley, dove over the hood of her car, and jumped inside. According to Little Dog, Zephier was running away from Leaf, who was driving a van down the alley and trying to run over him.

The first day of testimony was not limited to Leaf's history of violence toward Wells, Zephier, and Makes Him First. Little Dog testified that Leaf once threatened her with a four-inch switchblade. When Little Dog took the knife away, Leaf pursued Little Dog to her house and tried to run over her with a van. Leaf only succeeded in striking Little Dog's car. Patricia Eagle Shield (Eagle Shield) testified she once saw Leaf stab Curtis Red Fox (Red Fox), who was Leaf's husband at the time. Eagle Shield and her sister watched the assault from behind a parked car. When Leaf discovered she was being watched, she stabbed Eagle Shield and her sister, too. Both sisters went to a hospital, where their wounds were treated with stitches.

On October 29, December 11, and December 21, the district court heard more testimony about Leaf's involvement in the death of Zephier. One witness testified she saw Leaf strike Zephier with a car two weeks before he died. Several other witnesses testified that both Leaf and Zephier attended a party on the night Zephier died. None of these witnesses saw Leaf and Zephier fighting. The party's hostess said Zephier left at about 8:00 p.m., and Leaf did not leave the house at any time

during the night. Zephier's body was found approximately one mile from the house where the party took place.

The district court relied on this evidence of uncharged conduct in fashioning Leaf's sentence. Although the court did not find that Leaf killed Zephier, it did find that Leaf: (1) struck Zephier with a vehicle prior to his death, (2) stabbed Red Fox with a knife, (3) stabbed Makes Him First "a number of times," and (4) attempted to strike Little Dog with a vehicle. The district court found that each of the first three incidents – Leaf's conduct toward Zephier, Red Fox, and Makes Him First – was serious enough to warrant the imposition of three criminal history points. To these nine points, the district court added two criminal history points for Leaf's conduct toward Little Dog. The district court stated it was being "very lenient" in considering only these four instances, and that Leaf would be "off the chart" if points were assigned for all of her uncharged criminal conduct.

Based on these four instances of conduct, the district court departed upward the equivalent of eleven criminal history points. Adding eleven points to the two points already listed in the PSR, the district court arrived at criminal history category VI. The court then used the guidelines sentencing table to determine that Leaf's criminal history and her offense level of 22 warranted a range of imprisonment from 84-105 months. The district court sentenced Leaf to 94 months imprisonment. The court noted that a sentence of 94 months imprisonment would also be appropriate if it had departed upward to criminal history category V.

On appeal, Leaf challenges the upward departure on three grounds. First, she argues the district court erred in the factual findings used to support the departure. Second, she argues the district court assigned too many criminal history points in determining the extent of its upward departure. Third, she argues the sentence deprived her of her constitutional rights to due process and trial by jury. We reject all of these arguments.

## II.    DISCUSSION

A district court may depart upward from a defendant's guideline range when "reliable information indicates that the criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that the defendant will commit other crimes."  U.S.S.G. § 4A1.3, p.s.  Such "reliable information" may include "prior similar adult criminal conduct not resulting in a criminal conviction."  U.S.S.G. § 4A1.3(e), p.s.

### A.    Factual Findings

Leaf claims the district court erred in its findings of fact.  During an evidentiary hearing, which spanned parts of four days and included testimony from fourteen witnesses, the district court heard evidence of numerous instances of uncharged criminal conduct from Leaf's past.  The district court based its departure on four of those instances: (1) the vehicular assault on Zephier (before his death); (2) the vehicular assault on Little Dog; (3) the stabbing of Red Fox; and (4) the stabbing of Makes Him First.  Leaf contests the district court's findings as to these instances, arguing the evidence could have been construed differently.  For example, she contends the evidence did not rule out the possibility that she accidentally ran into Zephier, that she intended only to strike Little Dog's vehicle, and that she stabbed Red Fox and Makes Him First in self defense.

We review the factual findings used to support an upward departure for clear error.  United States v. Whatley, 133 F.3d 601, 606 (8th Cir. 1998).  On the basis of the sentencing record, it was reasonable for the district court to reject Leaf's interpretations of the evidence.  Our review of the record does not leave us with the definite and firm conviction that a mistake has been committed.  See id.  We therefore accept the court's findings of fact for purposes of evaluating its upward departure.

**B.    Extent of the Departure**

Leaf also claims the district court erred in its use of criminal history points to determine the extent of the upward departure. In Leaf's case, the district court determined that three instances of uncharged conduct each merited three criminal history points. Under the guidelines, three criminal history points (the maximum provided for any crime) are assessed when the defendant was previously convicted and sentenced to prison for more than one year and one month. See U.S.S.G. § 4A1.1(a). Leaf claims the district court erred by assessing three criminal history points for each of the three separate instances of uncharged conduct, thereby evaluating each instance as if it had resulted in a conviction and sentence of imprisonment.

We review a district court's decision to depart upward for abuse of discretion. United States v. Goings, 200 F.3d 539, 542 (8th Cir. 2000) (citing Koon v. United States, 518 U.S. 81, 96-100 (1996)). In the past, we have rejected the notion that district courts must take a mechanistic approach to departures based on criminal history. See United States v. Levi, 229 F.3d 677, 679 (8th Cir. 2000). We similarly reject Leaf's suggestion that the district court was limited to assigning two or fewer points to her instances of uncharged conduct. The four instances the district court relied on were serious and the tip of an iceberg of violence. In considering the gravity of these incidents, the district court placed them in their proper context – Leaf's habitual and alarming use of violence toward others. We respect the district court's superior feel for the case, and find it did not abuse its discretion in weighing the seriousness of Leaf's uncharged criminal history or in determining the extent of its upward departure. See United States v. Lewis, 235 F.3d 394, 396-97 (8th Cir. 2000).

**C.    Constitutional Claims**

Finally, Leaf claims the use of uncharged criminal conduct to enhance her sentence violated her constitutional rights to due process and a fair trial. We have

rejected these same arguments in the past, and we also reject them now. United States v. Galloway, 976 F.2d 414, 422-27 (8th Cir. 1992) (en banc). We note that the unusually drawn out sentencing proceedings gave Leaf an opportunity to call rebuttal witnesses and address factual and legal issues which arose for the first time during the sentencing hearing. We also note that Leaf has not argued in her briefs that the sentencing procedures violated Rule 32 of the Federal Rules of Criminal Procedure. See Burns v. United States, 501 U.S. 129, 138-39 (1991).

## III.  CONCLUSION

The district court did not clearly err in its findings of fact about Leaf's uncharged criminal conduct and did not abuse its discretion in determining the extent of the upward departure. Nor did the district court's use of uncharged criminal conduct to support the upward departure violate Leaf's constitutional rights. Accordingly, we affirm the judgment of the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.