# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

—————

No. 02-1640

—————

United States of America,　　　　　*
　　　　　　　　　　　　　　　　　*
　　　　　Plaintiff-Appellee,　　　　*
　　　　　　　　　　　　　　　　　*　Appeal from the United States
　　　　v.　　　　　　　　　　　　*　District Court for the
　　　　　　　　　　　　　　　　　*　District of South Dakota
O'Neil Frank Iron Cloud,　　　　　　*
　　　　　　　　　　　　　　　　　*
　　　　　Defendant-Appellant.　　　*

—————

Submitted: October 8, 2002
Filed:  December 10, 2002

—————

Before MURPHY, JOHN R. GIBSON, and SMITH, Circuit Judges.

—————

MURPHY, Circuit Judge.

O'Neil Frank Iron Cloud pled guilty to voluntary manslaughter in Indian country in violation of 18 U.S.C. §§ 1112 and 1153, and he was sentenced to 110 months imprisonment.  Iron Cloud appeals from the judgment of the district court,[1] challenging an upward departure from the sentencing guidelines and an order of

---

[1]The Honorable Charles B. Kornmann, United States District Judge for the District of South Dakota.

restitution which provided for a traditional Native American giveaway ceremony in commemoration of his victim.[2] We affirm.

Iron Cloud, a member of the Standing Rock Sioux Tribe, went out with friends on the evening of June 12, 2001. They stopped at the home of the victim, who was Iron Cloud's second cousin, and Iron Cloud persuaded his friends to allow her to go out with them, even though at seventeen she was a little younger than the rest. They all went to "the tree," an outdoor gathering place near their Little Eagle community in South Dakota. They all began drinking, and eventually the victim became severely intoxicated. She was put in the back seat of a car where she slept awhile. After most of the group had wandered away, Iron Cloud had sexual intercourse with the victim on the bank of the Grand River. Later she became angry and began insulting Iron Cloud and his friends. Iron Cloud responded by hitting her hard and knocking her temporarily unconscious. He then dragged her into the river where she regained consciousness. The river is approximately three feet deep at this spot, and he repeatedly forced her under the water. After he had pushed her under thirteen to fifteen times, he lost his grip and she was swept away downstream. Iron Cloud's friend searched for her without success, but Iron Cloud did nothing to rescue her. Neither reported to anyone that she had been lost in the river, allowing her family to believe a story that she had been seen getting into a car bound for Minneapolis that night. The police and the community continued to search for her and held out hope that she was alive until her body was found in the river three days later, resting on a sandbar.

Iron Cloud pled guilty to voluntary manslaughter and came before the district court for sentencing. The district court enhanced Iron Cloud's base offense level by two levels for a vulnerable victim and two levels for physical restraint of the victim.

---

[2]To protect her right to privacy, we do not refer to the victim by name. See 18 U.S.C. § 3509(d) (2000).

See United States Sentencing Commission, Guidelines Manual, §§ 3A1.1, 3A1.3 (Nov. 2001) [USSG]. It gave him a three level reduction for acceptance of responsibility, see id. § 3E1.1, which resulted in an adjusted offense level of 26. Combined with a criminal history category of I, this yielded a sentencing range of 63 to 78 months. See id. Ch.5, Pt.A. The court then departed upward four levels for extreme conduct under § 5K2.8, noting that Iron Cloud had repeatedly thrust the victim under water, no doubt terrifying her in the process, that he had allowed her to be swept away without doing anything to help save her, and that he had caused pain to her family by failing to disclose what had actually happened to her. See id. § 5K2.8. The upward departure produced a sentencing range of 97 to 121 months, see id. Ch.5, Pt.A, and the district court sentenced Iron Cloud to 110 months, ten months less than the statutory maximum, see 18 U.S.C. § 1112 (2000). For restitution, the court ordered him to reimburse the South Dakota Crime Victim's Compensation Fund for the $3700 it had paid for the victim's funeral expenses and to pay $3000 to the victim's father for a traditional giveaway ceremony to commemorate her.

Iron Cloud appeals on two grounds. He contends that the upward departure for extreme conduct was improper because it was based on conduct which was within the heartland of a voluntary manslaughter offense and which had already been accounted for by the enhancements for vulnerable victim and restraint of the victim. He argues in addition that the district court improperly treated the deceased's family members as victims of the crime in its reasons for departure and imposed an unreasonable sentence. He also objects that a giveaway ceremony does not come within the terms of the Mandatory Victims Restitution Act (MVRA) which provides that a defendant shall be ordered to "pay an amount equal to the cost of necessary funeral and related services." 18 U.S.C. § 3663A(b)(3) (2000).

The standard of review is abuse of discretion on an upward departure under § 5K2.8 and on the reasonableness of the sentence. United States v. Loud Hawk, 245 F.3d 667, 669 (8th Cir. 2001) (upward departure); United States v. Sample, 213 F.3d

1029, 1034 (8th Cir. 2000) (reasonableness of sentence). In the course of that review, "'we respect the district court's superior feel for the case.'" Loud Hawk, 245 F.3d at 669–70 (quoting United States v. Perkins, 929 F.2d 436, 438 (8th Cir. 1991)); see Sample, 213 F.3d at 1034.

Section 5K2.8 permits a court to depart upward from the sentencing range established by the applicable guidelines if "the defendant's conduct was unusually heinous, cruel, brutal, or degrading to the victim." USSG § 5K2.8. Examples given by the Sentencing Commission for such conduct include "torture of a victim, gratuitous infliction of injury, or prolonging of pain or humiliation." Id. Iron Cloud's unusually cruel treatment of the victim places him squarely within the parameters of § 5K2.8 and outside the heartland of the typical voluntary manslaughter case. Not only did he knock the girl unconscious and then subject her to repeated pain and fear after she revived, by forcefully plunging her under the waters of the Grand River thirteen to fifteen times, but he also allowed her to be swept away by the rushing current and did nothing to try to save her. We cannot agree with Iron Cloud that this conduct had already been accounted for by the vulnerable victim and physical restraint enhancements. The district court indicated that those enhancements were based on entirely separate factors: the victim's intoxication, her limited state of consciousness, and the restraint placed on her when Iron Cloud dragged her into the river. Given the facts of this case, we cannot say that the district court abused its discretion in departing upward to impose a 110 month sentence. Cf. United States v. Keester, 70 F.3d 1026, 1027–28 (8th Cir. 1995) (affirming four level upward departure under § 5K2.8 and 108 month sentence for voluntary manslaughter where defendant severely beat victim, denied her immediate medical attention, and dragged her from vehicle to vehicle). Because Iron Cloud's unusually cruel, brutal, and degrading treatment of the victim is alone sufficient to justify the upward departure, there is no need to consider whether it was proper for the district court to take into account injury or pain he caused the victim's family.

Iron Cloud also challenges the restitution awarded for a giveaway ceremony. In a case of an offense "resulting in bodily injury that results in . . . death," the MVRA requires the district court to order the defendant to "pay an amount equal to the cost of necessary funeral and related services." 18 U.S.C. § 3663A(b)(3). Iron Cloud argues that the court erred by finding a giveaway ceremony to be a necessary funeral or related service. We review the court's finding for clear error. Cf. United States v. Young, 272 F.3d 1052, 1056 (8th Cir. 2001) ("finding of loss relating to restitution" reviewed under "a clearly erroneous standard").

At the sentencing hearing the victim's father testified that he followed Native American religious customs, that religious items such as medicine wheels put by the family at the site of the crime had been vandalized, and that a giveaway ceremony would be a memorial for his daughter to show how much she was loved and that its purpose was to "help bury my daughter."[3] He further testified that the family would need to make or buy items to be used in the giveaway, like star quilts and beadwork, and that this type of ceremony would cost between $3000 and $10,000. Iron Cloud offered no evidence to challenge that of the victim's father nor did he cross examine him about his characterization of the ceremony, its purpose, or its cost. The record supports the district court's determination that in these circumstances $3000 for a giveaway ceremony was a "necessary funeral or related services" expense. 18 U.S.C. § 3663A(b)(3).

_____

[3]The purpose of a giveaway ceremony is "to honor persons in a traditional indigenous manner," Alice B. Kehoe, The Giveaway Ceremony of Blackfoot and Plains Cree, 25 Plains Anthropologist 17, 17 (1980), and has "its roots in indigenous social and religious rituals," Gloria A. Young & Erik D. Gooding, Celebrations and Giveaways, in 13 Handbook of North American Indians 1011, 1023 (William C. Sturtevant et al. eds., 2001). At a giveaway ceremony for a deceased person, it is "customary for surviving family members to give away . . . . blankets, beadwork and quilts," as well as "the material possessions of the deceased to his or her friends." Margery H. Brown & Brenda C. Desmond, Montana Tribal Courts: Influencing the Development of Contemporary Indian Law, 52 Mont. L. Rev. 211, 217 n.20 (1991).

Accordingly, we affirm the judgment of the district court.

A true copy.

    Attest:

        CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.