# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

_____

Nos. 02-1176/1462

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee/ | * | |
| Cross-Appellant, | * | Appeal from the United States |
| | * | District Court for the |
| v. | * | Northern District of Iowa. |
| | * | |
| Casey Marie Yirkovsky, | * | |
| | * | |
| Appellant/ | * | |
| Cross-Appellee. | * | |

_____

Submitted: October 8, 2002
Filed: July 31, 2003

_____

Before HANSEN,[1] Chief Judge, HEANEY and MORRIS SHEPPARD ARNOLD, Circuit Judges.

_____

HANSEN, Circuit Judge.

After a trial, a jury found Casey Marie Yirkovsky guilty of being an unlawful user of a controlled substance in possession of a firearm, in violation of 18 U.S.C.

---

[1]The Honorable David R. Hansen stepped down as Chief Judge of the United States Court of Appeals for the Eighth Circuit at the close of business on March 31, 2003. He has been succeeded by the Honorable James B. Loken.

§ 922(g)(3) (2000), and possessing an unregistered firearm, in violation of 26 U.S.C. § 5861(d) (2000). The district court denied Yirkovsky's motion for judgment of acquittal and sentenced her to two concurrent four-year terms of probation, with one year to be spent in a community corrections center.

Yirkovsky appeals her convictions, and for the reasons stated below, we affirm. The government cross-appeals three sentencing matters, and for the reasons discussed below, we vacate Yirkovsky's sentence and remand for resentencing.

## I. Yirkovsky's appeal

Four witnesses testified at trial, and their testimony was as follows. Officer Lance Miller recovered marijuana stems and seeds, drug packaging materials, and drug consumption paraphernalia from the trash left outside Yirkovsky's residence. He then applied for and received a search warrant. Detective Dan Healy gathered and secured the evidence seized during the execution of the search warrant: a loaded shotgun and a blowgun inside the house near the front door, marijuana and consumption paraphernalia in the living room, and a loaded, sawed-off shotgun, a digital scale, ammunition, a crossbow, and arrows in Yirkovsky's bedroom.

Patrice Howard, Yirkovsky's friend of eight years, testified that she usually visited Yirkovsky's residence once or twice a week. Yirkovsky had been dating Ricky Jordan Black, Jr., who shared Yirkovsky's bedroom, and Howard had been dating William Stockfleet, who stayed in the second bedroom of the two-bedroom house. After an incident in which someone tried to break into the house while Yirkovsky was home alone at 3 a.m., Black acquired the shotguns for Yirkovsky's protection. Howard was accustomed to seeing the regular shotgun next to the front door and the sawed-off shotgun in the bedroom that Yirkovsky and Black shared, except on an occasion when Black showed Stockfleet how to use the regular shotgun and Yirkovsky and Howard watched. Black moved out of the residence

2

approximately a week before the police searched it, and Yirkovsky had purchased (but had not yet installed) a new lock for the entrance door.

Howard had known Yirkovsky and Black for a fairly long time, and throughout their relationship, Black came and went as he pleased. Thus, although Black had moved out about a week prior to the search, he left behind his two dogs, his clothing, and his other personal effects. Although Yirkovsky had ready access to the shotguns that Black had acquired for her protection, Howard never saw Yirkovsky handle them or claim ownership of them, and Yirkovsky told Howard that she did not like having them in her home. Howard characterized Black's relationship with Yirkovsky as physically abusive: he frequently hit her, bruised her, and blackened her eyes. Nonetheless, Yirkovsky stayed together with Black over a long span of time and through three changes of residence.

The parties stipulated that the shotguns had been transported in interstate commerce and that the sawed-off shotgun was unregistered. Detective Robert Elam, who participated in the search of the residence, testified that Yirkovsky told him that Black had acquired the shotguns in response to the attempted break-in that took place when Yirkovsky was home alone.

The defense presented no evidence. The jury found Yirkovsky guilty of both charges, and the district court denied her motion for judgment of acquittal.

On appeal, Yirkovsky argues that the district court erred in denying her motion for judgment of acquittal because there was insufficient evidence that she actually or constructively possessed the firearms. Our standard of review is highly deferential to the jury's verdict: we must view the evidence in the light most favorable to the verdict, we must accept all reasonable inferences supporting the verdict, and we will reverse only if no rational jury could have found Yirkovsky guilty beyond a reasonable doubt. See United States v. Kirkie, 261 F.3d 761, 768 (8th Cir. 2001). If

the trial evidence rationally supports two conflicting theories, we will not disturb the jury's choice of the theory that supports the convictions. See United States v. Chipps, 299 F.3d 962, 964 (8th Cir. 2002).

In our most recent case discussing criminal liability based on constructive possession, we defined constructive possession as follows:

> Possession of contraband can be either actual or constructive. We have held that an individual has constructive possession of contraband if he has ownership, dominion or control over the contraband itself, or dominion over the premises in which the contraband is concealed.
>
> Mere physical proximity to contraband is insufficient to convict a person of possession with intent to distribute. However, knowledge of presence combined with control over the thing is constructive possession. If there is knowledge, control is established by proof the person has dominion over the premises in which the contraband is concealed.

United States v. Cruz, 285 F.3d 692, 697 (8th Cir. 2002) (case citations and internal marks omitted). Under this definition, Yirkovsky had constructive possession of the firearms because it is undisputed that she had dominion over the residence and knew the firearms were present.

We previously rejected a sufficiency-of-the-evidence challenge to a conviction for constructive possession of a firearm where the trial evidence showed that the police searched the residence where the defendant was living at the time and seized the firearm from the bedroom the defendant shared with his wife. Although the defendant's wife claimed ownership of the firearm, we affirmed the defendant's conviction because "ownership is irrelevant to the issue of possession." See United States v. Boykin, 986 F.2d 270, 274 (8th Cir.), cert. denied, 510 U.S. 888 (1993).

4

There is no meaningful distinction between the evidence deemed sufficient in Boykin and the evidence presented at Yirkovsky's trial. Yirkovsky was living at the residence at the time of the seizure, approximately a week after Black had moved out. The firearms were recovered from Yirkovsky's bedroom and near the front door of the residence, areas over which she exercised either exclusive or shared dominion. Black did not testify, but even if he had testified that he was the owner of the shotguns, his ownership is irrelevant to Yirkovsky's possession.

The inference most favorable to the defense that can be drawn from the trial testimony is that Black brought the firearms into the residence against Yirkovsky's wishes, and she did not remove them during the week after he moved out because she thought he might return someday and hurt her if the guns were gone. The jury was by no means obligated to give credence to this inference. See United States v. Hill, 249 F.3d 707, 714 (8th Cir. 2001) ("Witness credibility is within the province of the jury, which we are not allowed to review.") But even if the jury did draw this inference, it does not disprove Yirkovsky's constructive possession of the shotguns. "[T]he essence of constructive possession is not direct, physical control, but the ability to reduce an object to actual possession; otherwise, constructive possession would have no meaning at all." United States v. Holm, 836 F.2d 1119, 1123 (8th Cir. 1988). If someone had again tried to break into the house while Yirkovsky was home alone, for example, nothing would have stopped her from using either of the loaded and readily accessible shotguns to repel the intruder.

The instant case differs from United States v. Hall, 999 F.2d 1298 (8th Cir. 1993), a case mentioned at oral argument. In that case, an infant was beaten to death while only his mother and her husband were present. The husband and wife were each physically capable of inflicting the injuries, and each of them told authorities a different story about how the injuries occurred. Only the husband was charged, and he was convicted after a trial at which neither he nor his wife testified. The district court granted the husband's motion for judgment of acquittal, and this court affirmed

5

because the trial evidence was equally probative of either spouse's guilt and did not prove beyond a reasonable doubt that the husband was responsible for beating the infant to death. See id. at 1299-1300. The Hall court distinguished a case in which a defendant's conviction for murdering an infant was upheld because he was the only one present at the time the injuries were inflicted. See id. The same distinction applies here: Yirkovksy, not Black, was residing at the house when the guns were seized. Black had moved out a week before, and Yirkovsky was on the verge of changing the lock on the residence's entrance door.

Because the evidence was sufficient to allow a reasonable jury to find that Yirkovsky constructively possessed the firearms, we affirm her convictions.[2]

## II. The government's cross-appeal

The government cross-appeals three sentencing issues. First, the presentence report (PSR) recommended that Yirkovsky should not receive a reduction for acceptance of responsibility because she had put the government to its burden of proof at trial on the element of her possession of the firearms. Yirkovsky objected, and at sentencing, the district court granted her a two-level acceptance-of-responsibility reduction. Second, the PSR recommended that Yirkovsky should receive a two-level reduction for having a minor role in the criminal activity. The government did not object, but Yirkovsky objected, requesting a four-level reduction for having a minimal role. At sentencing, the district court granted her a four-level reduction. Third, the district court granted Yirkovsky's request for a downward departure on the basis that Black had physically abused her during their relationship.

---

[2] We note that Black pleaded guilty to possessing the sawed-off shotgun and was sentenced to forty months in prison and three years of supervised release. This is consistent with the principle that constructive possession may be joint rather than exclusive. See United States v. Sianis, 275 F.3d 731, 733 (8th Cir. 2002).

## A.  Acceptance of responsibility

A defendant who goes to trial may still be eligible for an acceptance-of-responsibility reduction in "rare situations . . . for example, where a defendant goes to trial to assert and preserve issues that do not relate to factual guilt (e.g., to make a constitutional challenge to a statute or a challenge to the applicability of a statute to his conduct)."  U.S. Sentencing Guidelines Manual § 3E1.1, comment. (n.2) (2000).  We review de novo the defendant's eligibility for a reduction when, as here, it turns on the legal question whether the defense asserted at trial relates to factual guilt.  See United States v. Barris, 46 F.3d 33, 35 (8th Cir. 1995).

We previously held that a defendant challenges his factual guilt if he goes to trial on the issue whether he constructively possessed a firearm, making him ineligible for an acceptance-of-responsibility reduction. See United States v. Webber, No. 01-3646, 2002 WL 1339851, at *2 (8th Cir. June 20, 2002).  We are not bound by Webber because it is an unpublished opinion.  However, we may rely on it for its "persuasive value" because it squarely addresses the issue presented in the instant case and "no published opinion of this or another court would serve as well."  See 8th Cir. R. 28A(i).  We conclude that a challenge to constructive possession is a challenge to factual guilt as surely as a challenge to actual possession is a challenge to factual guilt:  actual and constructive possession are alternative ways of satisfying an element of the offense, and each is decided by the jury.  Accordingly, the district court erred in granting Yirkovsky a reduction for acceptance of responsibility.

## B.  Role in the offense

We review for clear error the district court's decision to grant Yirkovsky a four-level minimal-role reduction under U.S.S.G. § 3B1.2(a) (2000).  See United States v. Lopez-Arce, 267 F.3d 775, 784 (8th Cir. 2001).  Yirkovsky had the burden to prove her entitlement to the reduction, see id., and she put on no additional evidence at sentencing to show her minimal participation. The Sentencing Commission "intended

7

that the downward adjustment for a minimal participant will be used infrequently," listing as examples "someone who played no other role in a very large drug smuggling operation than to offload part of a single marihuana shipment" and "an individual [who] was recruited as a courier for a single smuggling transaction involving a small amount of drugs." U.S.S.G. § 3B1.2, comment. (n.2) (2000).

We are guided by an earlier decision, United States v. Ali, 63 F.3d 710 (8th Cir. 1995). In that case, the defendant was convicted of being a felon in possession of a firearm. The evidence showed that the defendant was a passenger in a car who was unaware that the driver had a loaded handgun. When the police pulled the car over, the driver shoved the firearm toward the defendant, and the police found the gun under the defendant's leg. The defendant argued that he deserved a four-level minimal-role reduction or a two-level minor-role reduction because he was less culpable than the driver and less culpable than the average person convicted of being a felon in possession of a firearm. The district court rejected his argument, and we affirmed, concluding that he was not entitled to a reduction. See id. at 712, 718-19.

Yirkovsky's argument is essentially the same: she is less culpable than Black, she is less culpable than Stockfleet, and she is less culpable than the typical defendant convicted of being a drug user in possession of a firearm and of possessing an unregistered firearm. We conclude that the district court clearly erred in granting Yirkovsky a four-level minimal-role reduction. Although we tend to agree that Yirkovsky is less culpable than Black, "[t]he mere fact that a defendant is less culpable than his codefendants does not entitle defendant to 'minor participant' status." Lopez-Arce, 267 F.3d at 784. "Whether a downward adjustment is warranted is determined not only by comparing the acts of each participant in relation to the relevant conduct for which the participant is held accountable, but also by measuring each participant's individual acts and relative culpability against the elements of the offense." Id. Yirkovsky fully satisfied the elements of each offense of which she was convicted, and certain aspects of her criminal activity exceeded the minimum

8

necessary to be found guilty of the offenses (e.g., her concurrent possession of marijuana, the presence of other weapons, the fact that both firearms were kept loaded and readily accessible, and the fact that one of the shotguns was sawed-off). And using the defendant in <u>Ali</u> as a reference point for what constitutes an average or typical person convicted of possessing a firearm, it is clear that Yirkovsky possessed the firearms for a significantly longer period of time.

Although we have overturned the four-level minimal-role reduction, we will leave Yirkovsky with a two-level minor-role reduction because the PSR recommended it and the government did not object to it at that time.

## C. Downward departure

Under the district court's Guidelines calculations, Yirkovsky's total offense level was sixteen, resulting in a Guidelines range of twenty-seven to thirty-three months in prison. Under what we have determined to be the correct Guidelines calculations, her total offense level is twenty, for a Guidelines range of forty-one to fifty-one months in prison. The district court's decisions on whether to grant Yirkovsky a downward departure and how much of a departure to grant made her eligible for probation rather than imprisonment. We cannot say with confidence that, given the correct starting point, the district court would have made the same decisions regarding downward departure. Accordingly, we leave the departure issue open on remand: at resentencing, the district court should consider anew whether Yirkovsky meets the stringent standard for a downward departure and, if so, how much to depart.

## III.

For these reasons, we affirm Yirkovsky's convictions but vacate her sentence and remand for resentencing consistent with this opinion.

HEANEY, Circuit Judge, dissenting.

I respectfully dissent from the majority's reversal of the district court's sentencing reductions. The majority's treatment of this case reflects a disturbing trend toward increasingly punitive sentencing. Moreover, it disregards the district court's discretion to fashion a sentence that, after having the opportunity to hear all the evidence and evaluate the defendant through her words and actions, would better serve both the defendant and society.

A simple survey of recent appeals from criminal sentences bears out this trend. Since May of 2000, the government appealed twenty-five cases in which the district court reduced the defendant's sentence. Of those, our court reversed the district court twenty-three times, and affirmed only twice. Compare United States v. Madrigal, 327 F.3d 738 (8th Cir. 2003) (affirming district court's sentence reduction), and United States v. Jauregui, 314 F.3d 961 (8th Cir. 2003) (same), with United States v. Swick, ___ F.3d ___, 2003 WL 21523788 (8th Cir. July 8, 2003) (reversing district court's sentence reduction), United States v. Dyck, ___ F.3d ___, 2003 WL 21498895 (8th Cir. July 1, 2003) (same), United States v. Aguilar-Portillo, ___ F.3d ___, 2003 WL 21498896 (8th Cir. July 1, 2003) (same), United States v. Johnson, 318 F.3d 821 (8th Cir. 2003) (same), United States v. Patterson, 315 F.3d 1044 (8th Cir. 2003) (same), United States v. Roberts, 313 F.3d 1050 (8th Cir. 2002) (same), United States v. Butler, 296 F.3d 721 (8th Cir. 2002) (same), United States v. Webber, 39 Fed. Appx. 469 (8th Cir. 2002) (same), United States v. Stone, 39 Fed. Appx. 478 (8th Cir. 2002) (same), United States v. Searcy, 284 F.3d 938 (8th Cir. 2002) (same), United States v. Reinke, 283 F.3d 918 (8th Cir. 2002) (same), United States v. Jimenez, 282 F.3d 597 (8th Cir. 2002) (same), United States v. King, 280 F.3d 886 (8th Cir. 2002) (same), United States v. Petersen, 276 F.3d 432 (8th Cir. 2002) (same), United States v. Sheridan, 270 F.3d 669 (8th Cir. 2001) (same), United States v. Lopez-Salas, 266 F.3d 842 (8th Cir. 2001) (same), United States v. Buckendahl, 251 F.3d 753 (8th Cir.

2001) (same), <u>United States v. Hasan</u>, 245 F.3d 682 (8th Cir. 2001) (same), <u>United States v. Patterson</u>, 17 Fed. Appx. 496 (8th Cir. 2001) (same), <u>United States v. Smith</u>, 240 F.3d 732 (8th Cir. 2001) (same), <u>United States v. Langmade</u>, 236 F.3d 931 (8th Cir. 2001) (same), <u>United States v. Heilmann</u>, 235 F.3d 1146 (8th Cir. 2001) (same), <u>and</u> <u>United States v. Aldaz-Loya</u>, No. 99-4339, 2000 WL 688228 (8th Cir. May 30, 2000) (same).

When it comes to cases in which the district court increased the defendant's sentence, one would expect to see a similar pattern of reversals, inasmuch as we have employed similar standards of review for both upward and downward adjustments and departures. Unfortunately, that is not the case. Since May of 2000, we were presented with appeals from forty-six upward departures. Of those, we reversed only two, and affirmed the other forty-four. <u>Compare</u> <u>United States v. Robertson</u>, 324 F.3d 1028 (8th Cir. 2003) (reversing increase in sentence), <u>and</u> <u>United States v. Bougie</u>, 279 F.3d 648 (8th Cir. 2002) (same), <u>with</u> <u>United States v. Chesborough</u>, ___ F.3d ___, 2003 WL 21467512 (8th Cir. June 26, 2003) (affirming increase in sentence), <u>United States v. Agee</u>, ___ F.3d ___, 2003 WL 21459015 (8th Cir. June 25, 2003) (same), <u>United States v. Orchard</u>, ___ F.3d ___, 2003 WL 21396650 (8th Cir. June 18, 2003) (same), <u>United States v. Tarantola</u>, 332 F.3d 498 (8th Cir. 2003) (same), <u>United States v. Aguilar-Lopez</u>, 329 F.3d 960 (8th Cir. 2003) (same), <u>United States v. Thornberg</u>, 326 F.3d 1023 (8th Cir. 2003) (same), <u>United States v. Fletcher</u>, 322 F.3d 508 (8th Cir. 2003) (same), <u>United States v. Thin Elk</u>, 321 F.3d 704 (8th Cir. 2003) (same), <u>United States v. Vagenas</u>, 318 F.3d 819 (8th Cir. 2003) (same), <u>United States v. Lalley</u>, 317 F.3d 875 (8th Cir. 2003) (same), <u>United States v. Rose</u>, 315 F.3d 956 (8th Cir. 2003) (same), <u>United States v. Villalobos-Cuellar</u>, 53 Fed. Appx. 800 (8th Cir. 2003) (same), <u>United States v. Evans</u>, 314 F.3d 329 (8th Cir. 2002) (same), <u>United States v. Johnson</u>, 53 Fed. Appx. 394 (8th Cir. 2002) (same), <u>United States v. Iron Cloud</u>, 312 F.3d 379 (8th Cir. 2002) (same), <u>United States v. Leaf</u>, 306 F.3d 529 (8th Cir. 2002) (same), <u>United States v. Bell</u>, 46 Fed. Appx. 390 (8th Cir. 2002) (same), <u>United States v. Scolaro</u>, 299 F.3d 956 (8th Cir. 2002) (same), <u>United States</u>

11

v. Zimmer, 299 F.3d 710 (8th Cir. 2002) (same), United States v. Garcia-Zuniga, 37 Fed. Appx. 848 (8th Cir. 2002) (same), United States v. Wilson, 36 Fed. Appx. 577 (8th Cir. 2002) (same), United States v. Bussey, 33 Fed. Appx. 834 (8th Cir. 2002) (same), United States v. Brown, 287 F.3d 684 (8th Cir. 2002) (same), United States v. Fellers, 285 F.3d 721 (8th Cir. 2002) (same), United States v. Evans, 285 F.3d 664 (8th Cir. 2002) (same), United States v. Garduno-Bustos, 37 Fed. Appx. 830 (8th Cir. 2002) (same), United States v. Callaway, 32 Fed. Appx. 771 (8th Cir. 2002) (same), United States v. Plummer, 22 Fed. Appx. 676 (8th Cir. 2001) (same), United States v. Evans, 272 F.3d 1069 (8th Cir. 2001) (same), United States v. Hampton, 260 F.3d 832 (8th Cir. 2001) (same), United States v. Sarff, 13 Fed. Appx. 467, (8th Cir. 2001) (same), United States v. Lashley, 251 F.3d 706 (8th Cir. 2001) (same), United States v. Red Cloud, 8 Fed. Appx. 579 (8th Cir. 2001) (same), United States v. Kingston, 249 F.3d 740 (8th Cir. 2001) (same), United States v. Big Crow, 11 Fed. Appx. 641 (8th Cir. 2001) (same), United States v. Loud Hawk, 245 F.3d 667 (8th Cir. 2001) (same), United States v. Starnes, 2 Fed. Appx. 639 (8th Cir. 2001) (same), United States v. Lewis, 235 F.3d 394 (8th Cir. 2000) (same), United States v. Wyatt, Nos. 99-3989, 99-3990, 99-3991, 99-3992, & 99-3993, 2000 WL 1474099 (8th Cir. Oct. 5, 2000) (same), United States v. Levi, 229 F.3d 677 (8th Cir. 2000) (same), United States v. Handley, No. 99-4118, 2000 WL 960942 (8th Cir. July 12, 2000) (same), United States v. Hernandez-Ramos, No. 99-3413, 2000 WL 960945 (8th Cir. July 12, 2000) (same), United States v. Garcia, No. 99-3650, 2000 WL 862576, (8th Cir. June 29, 2000) (same), and United States v. Sample, 213 F.3d 1029 (8th Cir. 2000) (same).

In other words, during the same three year period that our court was consistently *reversing* shorter sentences, we were consistently *affirming* longer ones. It is difficult for me to reconcile this contrast, and I am deeply concerned with the trend and the message it sends to district courts–that more severe sentences are far more likely to withstand appellate review. As to Yirkovsky's case, I believe the district court did not err in granting her sentencing reductions, and would affirm the sentence imposed.

## I.    ACCEPTANCE OF RESPONSIBILITY ADJUSTMENT

Despite the strictures of guideline sentencing, district courts still retain the authority to reduce a defendant's sentence where the defendant clearly demonstrates acceptance of responsibility.  USSG § 3E1.1.  Because the district court is in the best position to assess whether a defendant has, as a matter of fact, accepted responsibility, "[w]e review a sentencing court's decision to award or deny an acceptance-of-responsibility reduction for clear error."  United States v. Ervasti, 201 F.3d 1029, 1043 (8th Cir. 2000); see also USSG § 3E1.1, comment. (n.5) ("The sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility.  For this reason, the determination of the sentencing judge is entitled to great deference on review.").

The government, citing Ervasti, concedes that our court reviews a sentencing court's decision with regard to acceptance of responsibility for clear error. (Gov't Br. at 19.)  Nonetheless, the majority substitutes its own de novo standard of review, attempting to shape the issue as one that is entirely legal.  I simply cannot see how the resolution of whether a defendant is eligible for a reduction for acceptance of responsibility is a purely legal question.  Cf. United States v. Alverez, 235 F.3d 1086, 1090 (8th Cir. 2000) ("Although we review the district court's interpretation and construction of the sentencing guidelines de novo, '[w]hether a defendant qualifies for a minor participant reduction is a question of fact, the determination of which we review for clear error.'" (alteration in original) (citation omitted)).  Thus, I undertake my analysis under the clearly erroneous standard.

I agree that acceptance of responsibility reductions do not often apply to defendants who go to trial:

> This adjustment is not intended to apply to a defendant who puts the
> government to its burden of proof at trial by denying the essential

13

factual elements of guilt, is convicted, and only then admits guilt and expresses remorse. Conviction by trial, however, does not automatically preclude a defendant from consideration for such a reduction. In rare situations a defendant may clearly demonstrate an acceptance of responsibility for his criminal conduct even though he exercises his constitutional right to a trial. This may occur, for example, where a defendant goes to trial to assert and preserve issues that do not relate to factual guilt (e.g., to make a constitutional challenge to a statute or a challenge to the applicability of a statute to his conduct).

USSG § 3E1.1, comment. (n.2). The majority, citing our unpublished opinion in United States v. Webber, No. 01-3646, 2002 WL 1339851 (8th Cir. June 20, 2002), holds that Yirkovsky's denial of actual or constructive possession of the guns was a factual challenge, making her ineligible for this departure. I find this broad definition of what constitutes a "factual challenge" unworkable, for it conflicts with the clear intent of the sentencing guideline commission to reserve the departure for those who go to trial in order to challenge whether their conduct is criminally prohibited. In this regard, Yirkovsky's case is archetypal: at no time throughout these proceedings did she try to obstruct the government, and in many ways she was of assistance. After getting the search warrant in this case, members of the police department sought out Yirkovsky, who was not home at the time, for assistance in executing the warrant. She agreed to help, and accompanied the police back to the house. She allowed the police to search her purse, opened the home, and restrained Ricky Black's two pit bulls, Steel and Anthrax, while officers searched the home. She candidly admitted to possessing and using marijuana, and she told the officers where in the house Black's weapons were located. At trial, she put on no witnesses, and did not challenge any material factual assertions of the government's witnesses.

Yirkovsky did not contest the government's factual allegations. Indeed, she admitted that the guns were in the house, that she lived there, and that she was a drug user. Yirkovsky simply argued that the facts alleged (and admitted) did not constitute the crimes charged. This is not a factual challenge; it is a legal challenge to the

applicability of a criminal statute to one's conduct. To the extent that <u>Webber</u>–an unpublished case the majority admits has no precedential value[3]–suggests an inconsistent result, it is at odds with relevant guideline commentary and published decisions of other circuits, and thus should not be followed. <u>See, e.g.</u>, USSG § 3E1.1, comment. (n.2) (expressly permitting use of acceptance of responsibility departure in cases where defendant goes to trial to "challenge to the applicability of a statute to [her] conduct"); <u>United States v. Broussard</u>, 987 F.2d 215, 224 (5th Cir. 1993) ("We agree with Broussard that as to the § 924(c)(1) offense, he accepted responsibility. He admitted ownership of the guns found in his home and their location. He went to trial to contend that § 924(c)(1) did not apply to these uncontested facts. This issue does not relate to factual guilt as that phrase is used in Application Note 2.") *overruled on other grounds by* <u>J.E.B. v. Alabama ex rel. T.B.</u>, 511 U.S. 127 (1994).

Moreover, I am not convinced that even a factual challenge would disqualify a defendant from this departure. The relevant commentary makes clear that the guideline reduction remains *available* for the district court's consideration, even if the defendant exercises his or her constitutional right to trial. USSG § 3E1.1, comment. (n.2); <u>accord</u> <u>United States v. Montano-Gudino</u>, 309 F.3d 501, 506-07 (8th Cir. 2002) (recognizing that in rare cases defendant who denies essential elements of crime could be awarded acceptance of responsibility departure based on pretrial statements and conduct). Whether or not the defendant should actually receive the departure is another matter, one which is left to the district court's sound discretion.

---

[3] 8th Cir. R. 28A(i) (stating unpublished opinions have no precedential value). While I have my doubts as to whether a rule such as 28A(i) can withstand constitutional muster, <u>see</u> <u>Anastasoff v. United States</u>, 223 F.3d 898, 905 (8th Cir. 2000) (Heaney, J., concurring) (agreeing with Judge Richard Arnold that Circuit rule limiting precedential value of unpublished opinions was unconstitutional), I recognize that Rule 28A(i) remains binding in this circuit, <u>Anastasoff v. United States</u>, 235 F.3d 1054, 1056 (8th Cir. 2000) (en banc) ("The constitutionality of that portion of Rule 28A(i) which says that unpublished opinions have no precedential effect remains an open question in this Circuit.")

Because the district court did not clearly err in this case, that discretion should be left undisturbed.

## II.  MITIGATING ROLE ADJUSTMENT

The majority's determination that Yirkovsky was not a minimal participant is exemplary of what I believe is a pattern of our court overstepping its limited appellate role in sentencing.  We are obligated to review the district court's finding as to whether a defendant qualifies for a mitigating role reduction for clear error.  United States v. Alverez, 235 F.3d 1086, 1090 (8th Cir. 2000).  While the majority purports to agree that this is our standard of review, an examination of its analysis reveals that what it is really doing is undertaking a de novo review, substituting its own judgment for that of the district court.

After reading the majority's discussion, one is left with the impression that United States v. Ali, 63 F.3d 710 (8th Cir. 1995), is so indistinguishable as to bar Yirkovsky from eligibility for the mitigating role reduction.  The defendant in Ali claimed, as Yirkovsky does, he was less culpable than the average defendant in a gun case because of the circumstances of the crime.  Id. at 719.  And it is true, of course, that both Yirkovsky and the defendant in Ali moved for mitigating role reductions. Id. at 713.  However, in Ali, the district court did *not* grant the sentence reduction, and the question before us was whether that choice was clearly erroneous.  Id. at 718-19.  In affirming the district court, we did not limit those instances in which the mitigating role reduction is available; rather, we simply recognized that the decision to grant or deny the reduction was within the purview of the district court, and our limited role was to review that decision for clear error.  Id. at 719.  The majority attempts to morph Ali's holding that the district court did not clearly err in denying a sentence reduction under Ali's facts into a Circuit mandate that a reduction is not available under factual circumstances similar to those in Ali.  Perhaps if we reviewed both Ali and Yirkovsky's case under a de novo standard this would withstand

16

scrutiny. As it stands, however, it fails to account for the vast middle ground in which a district court is within its discretion to either grant or deny a sentence reduction.

To my mind, Yirkovsky falls squarely within this middle ground. A sentencing court may reduce a defendant's offense level four levels where it finds the defendant to be a minimal participant in the crime. USSG § 3B1.2. This reduction "is intended to cover defendants who are plainly among the least culpable of those involved in the conduct of a group." Id., comment. (n.4). In this case, the district court considered Yirkovsky's conduct in contrast to that of co-defendant Ricky Black. By all accounts, Black lived at the house until shortly before the search, acquired the guns, brought them to the house, and demonstrated to others how the guns worked. On the other hand, Yirkovsky never claimed to have control over the guns, never touched the guns, and did not like them being in the house. Moreover, according to one witness, Black was physically abusive to Yirkovsky and likely would have beaten Yirkovsky if she had touched the guns. Yirkovsky's offense was predicated on the fact that she allowed the guns to remain in her residence. Based on this evidence, I simply cannot agree that the district court erred in finding Yirkovsky to be a minimal participant in the offenses.

## CONCLUSION

Being of the view that we are to respect the district court's superior position in the sentencing process and for the reasons stated herein, I would affirm the district court.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.

17