# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-3105

_____

United States of America,      *
           *
           Appellant,    *
           *
    v.       *
           *
Richard T. King,        *
           *
           Appellee.    *

_____

No. 00-3106

_____

United States of America,      *
           *
           Appellee,    *  Appeals from the United States
           *  District Court for the District of
    v.       *  Minnesota.
           *
Richard T. King,        *
           *
           Appellant.    *

_____

No. 00-3107
_____

United States of America,      *

            *

       Appellee,      *

            *

   v.      *

            *

Joe W. King,      *

            *

       Appellant.      *

_____

Submitted:  February 12, 2002

Filed:  February 20, 2002

_____

Before McMILLIAN, FAGG, and RILEY, Circuit Judges.

_____

FAGG, Circuit Judge.

The Government charged Richard T. King and his father, Joe W. King, with conspiracy to commit money laundering, mail fraud, wire fraud, and money laundering for operating a cash rental "ponzi" scheme in which investors lost millions of dollars.  In a separate indictment, the Government charged the Kings with conspiracy to commit money laundering, mail fraud, wire fraud, and money laundering for their role in a related treasury bill leasing program.  After a trial on the charges arising from the ponzi scheme, the Kings were convicted.  They then pleaded guilty to one count of conspiracy to commit money laundering on the treasury bill indictment.  The cases were consolidated for sentencing.

The district court agreed with the PSR's recommendations and, as required by Eighth Circuit law, did not group the money laundering counts with the fraud counts. See United States v. Hetherington, 256 F.3d 788, 797 (8th Cir. 2001); United States v. O'Kane, 155 F.3d 969, 971-74 (8th Cir. 1998). The district court started with a base offense level of 23 for money laundering. See U.S. Sentencing Guidelines Manual (U.S.S.G. or Guidelines) § 2S1.1(a)(1) (2000). After further calculations, the district court decided Joe's Guidelines range was 210-262 months, and imposed a 210-month sentence. The court decided the Guidelines range for Richard was 108 to 135 months, but found Richard's family situation was outside the heartland of cases contemplated by the Guidelines because he had a significant relationship with his preschool-aged children, his wife had advanced rheumatoid arthritis, and because of Richard's "extraordinary loyalty, if not blind trust," in his father. Over the Government's objection, the district court departed downward from the applicable sentencing range under U.S.S.G. § 5K2.0 and sentenced Richard to 48 months in prison.

On appeal, the Government asserts the district court abused its discretion in granting a downward departure from the applicable Guidelines range based on Richard King's family circumstances and his father's influence. A district court may not depart below the applicable Guidelines range unless the court finds a "'mitigating circumstances of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines.'" U.S.S.G. § 5K2.0 (quoting 18 U.S.C. § 3553(b)). The Commission names certain potential mitigating factors in the Guidelines and either forbids, discourages, or encourages their consideration. See Koon v. United States, 518 U.S. 81, 93-96 (1996). As the Government points out, the Guidelines discourage consideration of family ties and responsibilities as grounds for departure. U.S.S.G. § 5H1.6. Discouraged factors are not ordinarily relevant and support a departure "only if the factor is present to an exceptional degree or in some other way makes the case different from the ordinary case where the factor is present." Koon, 518 U.S. at 96. Although we give substantial deference to a district

court's decision that a discouraged factor justifies departure because it is present in some unusual or exceptional way, we compare the circumstances given for departure in the defendant's case to the circumstances in existing reported Guidelines cases to ensure the district court has not abused its discretion. See id. at 98.

After reviewing other Guidelines cases, we conclude Richard "has not shown his family's circumstances are substantially different from those facing families of any other defendant about to be incarcerated." United States v. Kapitzke, 130 F.3d 820, 822 (8th Cir. 1997). Courts have reversed downward departures based on family circumstances where the defendant was the sole support for three young sons because his wife was disabled with depression, United States v. Goff, 20 F.3d 918, 921 (8th Cir. 1994), where the defendant was a single parent providing for five children, one of whom had a substantial neurological deficit in the form of Tourette's syndrome, United States v. Sweeting, 213 F.3d 95, 101 (3d Cir. 2000), and where the defendant was a single parent of two children and caretaker for a diabetic mother, United States v. Archuleta, 128 F.3d 1446, 1450-51 (7th Cir. 1997). Richard's situation is more ordinary than these cases where the departures were reversed. Richard is not a single parent, and there are no findings that Richard's wife is unable to care for their children because of her arthritis. Indeed, the situation of Richard's family is better than most because Richard's wife lives next door to her parents and the Government agreed not to seek forfeiture of Richard's residence so the children would not be displaced.

The Government asserts the district court's other reason for departing–the influence of Richard's father–was already taken into account by the Guidelines' consideration of role in the offense. U.S.S.G. § 5H1.7. Richard disagrees, asserting the Guidelines do not account for the fact that he became involved in the offenses because of his devoted commitment to his father. While recognizing "a parent's unique position vis-a-vis his or her child may result in an ability to wield significant influence over that child," the Tenth Circuit has held parental influence is most

appropriately analyzed under U.S.S.G. § 5K2.12 (permitting departure for coercion and duress). United States v. Contreras, 180 F.3d 1204, 1211 (10th Cir. 1999). Although "'serious coercion, blackmail or duress'" is a potential ground for departure under § 5K2.12, "'[o]rdinary coercion will be sufficiently serious to warrant departure only when it involves a threat of physical injury, substantial damage to property or similar injury resulting from the unlawful action of a third party or from a natural emergency.'" Id. (quoting U.S.S.G. § 5K2.12). Absent these specific serious threats, coercion is a discouraged basis for departure and must be present in some unusual or exceptional way to warrant departure from the Guidelines range. Id. at 1212. For example, the Tenth Circuit held an uneducated, twenty-four year-old single mother of three children who was financially and emotionally dependent on her father was not entitled to a downward departure because her father influenced her to participate in the drug conspiracy he ran. Id.

Here, the district court did not specify any facts that would support a finding that Richard's case involved an exceptional degree of coercion. Instead, all the evidence supports the conclusion that Richard's relationship with his father does not take his case outside the heartland of the Guidelines. At the time of the offense, Richard was thirty-two years old and a college graduate with a degree in business administration and finance. All the evidence shows Richard had full knowledge and understanding of the nature of the fraudulent transactions, and actively participated in them for financial gain. Richard did not present a duress defense at trial, and the jury found him criminally responsible in nearly all of the criminal activities he participated in with his father. At sentencing, the district court found Richard was an average participant in the scheme, not a minor or minimal participant permitting a downward adjustment. In sum, the evidence does not support a downward departure based on Richard's relationship with his father.

Finally, the individually insufficient factors do not in combination make this an "extremely rare" case warranting departure. U.S.S.G. § 5K2.0 commentary; see

<u>Contreras</u>, 180 F.3d at 1213. We thus conclude the district court abused its discretion in departing from the applicable Guidelines range when sentencing Richard King.

In a joint argument, Richard and Joe King both assert we should vacate their sentences and remand for resentencing based on a Guidelines amendment that alters U.S.S.G. § 2S1.1 (money laundering). Although the Kings refer to amendment 22, the correct amendment number is 634. Amendment 634 to the Sentencing Guidelines (effective November 1, 2001 after the Kings' sentencing) changes calculation of the offense level for money laundering in § 2S1.1. Rather than setting base offense levels of 23 or 20 like the earlier version, the amended version sets a base offense level of either the offense level for the underlying offense from which the laundered funds were derived, or eight plus the number of offense levels from the table in § 2B1.1 (fraud) corresponding to the value of the laundered funds. <u>See</u> U.S.S.G. § 2S1.1(a)(1) (2001). Also, contrary to our interpretation of the earlier Guideline, <u>see</u> <u>United States v. Hildebrand</u>, 152 F.3d 756 (8th Cir. 1998), a new application note states money laundering counts and counts for the underlying offense from which the laundered funds were derived shall be grouped under U.S.S.G. § 3D1.2(c). According to the Kings, their offense levels would be lower under the amended guideline. The Government responds the Kings' total offense levels would be higher. We agree with the Government, but need not explain the calculations because we conclude the amendment does not apply to the Kings.

A defendant sentenced under one version of the Guidelines may be given the benefit of a later revision if the revision merely clarifies, rather than substantively changes, the Sentencing Commission's earlier intent. <u>See</u> U.S.S.G. § 1B1.11(b)(2). After considering the amendment's language, its effect and purpose, and the earlier version, we conclude amendment 634 substantively changes the Guidelines. <u>United States v. McIntosh</u>, No. 00-50966, 2002 WL 58867, at *5-6 (5th Cir. Jan. 16, 2002); <u>United States v. Sabbeth</u>, No. 00-1586, 2001 WL 1692857, at *2-5 (2d Cir. Jan. 11, 2002). Further, in 28 U.S.C. § 994(u), Congress gave the Sentencing Commission the

unusual explicit power, implemented in U.S.S.G. § 1B1.10, to decide whether its amendments will be given retroactive effect. <u>Braxton v. United States</u>, 500 U.S. 344, 348 (1991). The Sentencing Commission did not include amendment 634 in the list of amendments to be applied retroactively. <u>See</u> U.S.S.G. § 1B1.10(c) (2001). Also, the amendment's commentary does not state the amendment is intended to clarify, but instead reflects substantive intent. <u>U.S. Sentencing Guidelines Manual, Supp. to App. C</u> 233-34 (2001). Because amendment 634 substantively changes the Guidelines, it does not apply to the Kings and no remand for resentencing under the amendment is warranted. The district court properly applied the Guidelines in effect at the time of the Kings' sentencing.

We thus reverse the district court's downward departure from the applicable Guidelines range for Richard King, and remand for resentencing within the applicable Guidelines range of 108-135 months. We affirm Joe King's sentence. We need not rule on the Government's motion to dismiss the Kings' appeals of their convictions because the Kings do not pursue them.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.