# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-3954

_____

United States of America,         *

                                       *

     Plaintiff - Appellant,    *

                                       * Appeal from the United States

v.                            * District Court for the

                                     * District of Minnesota.

Faye S. Reinke,             *

                                       *

     Defendant - Appellee.   *

_____

Submitted:  August 21, 2001

Filed:  March 15, 2002

_____

Before BYE, LAY, and JOHN R. GIBSON, Circuit Judges.

_____

JOHN R. GIBSON, Circuit Judge.

The United States appeals from the sentence imposed on Faye S. Reinke after her conviction of conspiring to defraud the United States, in violation of 18 U.S.C. § 371 (1994).  The district court departed downward from the sentencing range prescribed by the Sentencing Guidelines, arriving at a sentence of six months in a community facility, two years probation with 150 hours per year of community service, and three years of supervised release.  The United States contends that the district court abused its discretion in sentencing because the court found that Reinke's

case did not fall outside the heartland of the applicable guideline and because the factors the district court relied on in deciding to depart downward were already adequately taken into account by the guidelines. We vacate the sentence and remand.

I.

Reinke and her co-defendant, Glenn Rois, marketed and sold hundreds of trusts throughout the Midwest over a ten-year period. Rois and Reinke told trust purchasers that they could assign their assets and income to the trusts and then deduct from their taxes the money that they paid for personal living expenses, such as food and clothing. As one purchaser put it, "You put all your assets, everything you have into the trust, and the trust takes care of you." Rois and Reinke helped the trust purchasers get tax identification numbers for the trusts. They instructed the purchasers to identify the trusts by tax identification number, rather than by the purchaser's own social security number, so that the trust's bank accounts could not be traced back to the purchaser. Reinke notarized documents for people who never actually signed them, and Rois and Reinke advised trust purchasers to backdate the trust instruments. When Rois learned that customers were about to be audited by the Internal Revenue Service, Rois and Reinke purged the customers' files, substituted new documents for original ones, and asked the customers to lie if questioned about who prepared their trust documents.

Rois was indicted on one count of conspiracy to defraud the United States and four counts of making and subscribing a false tax return. Reinke was indicted only for conspiracy to defraud the United States. The case was tried to a jury, which convicted Reinke of the conspiracy charge and Rois of all five charges. After they received their presentence investigation reports, both Rois and Reinke sent a letter to the probation officer who prepared their reports. The letter demanded that the officer pay the defendants $132,555, which was the amount of the tax loss from their activities, as ascertained by the court. There was, of course, no legal basis for their

-2-

demand. During the sentencing hearing, Reinke apologized to the probation officer and to the court. The court asked her what specifically she was apologizing for, and Reinke said, "I am apologizing because if I have done wrong, I will never be involved with anything like this again."

At the conclusion of the sentencing hearing, the court determined that the appropriate base offense level was prescribed by USSG § 2T1.9, United States Sentencing Commission, Guidelines Manual, the guideline for conspiracy to impede, impair, obstruct, or defeat tax. Section 2T1.9, in turn, incorporates by reference another guideline and a table prescribing offense level according to amount of tax loss. USSG §§ 2T1.4 and 2T4.1. To the base offense level derived from § 2T1.9, the court added two points for the specific offense characteristic of sophisticated concealment under § 2T1.4(b)(2). The court also added two points for the specific offense characteristic of conduct intended to encourage others to violate the law. USSG § 2T1.9(b)(2). Finally, the court adjusted the offense level upward by two points for obstruction of justice, USSG § 3C1.1, because of the harassing letter Reinke sent to the probation officer.

The court denied Reinke's request for a downward adjustment for mitigating role in the offense, with the following findings:

> The Defendant clearly was less of a moving actor than her colleague [Rois]. I will take that into account in my sentencing. But, she was also a person who fully cooperated, fully assisted, made it easier for Mr. Rois in his work, and participated on her own. She signed documents and falsified them and did a number of other things.
>
> They basically were equal in their roles, but they did differing kinds of things. And I will take that into consideration in the course of my sentencing. And so, on that basis, I do note that she was present during the meetings. She assisted in many ways. And of course she also, you know, we had all of these silly lies about what he really did,

-3-

that sort of thing. It was all wrong and she knew it was all wrong. So, I have no problem with the fact that she was also involved in all aspects of this.

Later, in a similar vein, the court addressed Reinke directly:

[T]he record is absolutely crystal clear who was the largest moving part in this operation. But, I also know that you assisted in every way that you could and you provided the various kinds of information and you performed services, made it possible for your colleague to do the thing that he was doing . . . . It appears to me . . . you thought Mr. Rois was speaking important words that were of value. . . . You knew he wasn't doing the right things. You are too smart for that.

Adding the results of all these guidelines point determinations, the court set Reinke's final offense level at 21.

The court specifically found that Reinke's case fell within the heartland of the appropriate guideline: "I do not see a basis to indicate that this case falls outside of the heartland. . . . ." However, the court did observe that if sending the harassing letter to the probation officer had not been accounted for as an obstruction of justice, the court would have been authorized to depart upward from the guidelines range to account for it.

The court determined that the guidelines range was 37-46 months imprisonment. However, the court announced that the sentence imposed would instead be six months in a community facility, two years probation, and three years supervised release. The court stated: "I departed downward. I gave you the guideline here and I went below it." The Judge explained his decision:

I want to tell you the reasons why, because you were not the most active, most active participant in this arrangement. It did not appear to me that you were the initiator. It does not appear to me you derived any dollar

-4-

or cash benefits of any substance in this case. Under those circumstances it appears to me appropriate. Also, frankly, you have indicated at least a degree of contrition. Those things make it appear to me that it is proper to depart downward in this circumstance.

After the court announced the reasons for its departure, the Assistant United States Attorney inquired about the court's methodology for arriving at the sentence:

> AUSA: [W]ould the Court tell us to what level it has departed from the level 21?
> Court: I can do a split at 10, can't I?
> AUSA: Yes, you can.
> Court: For the moment we will call it 10. . . . I have no hesitation in indicating both for the record and for any possible appeal that I am not sentencing a mathematical construct. I am not sentencing a collection of points. I am sentencing a real live human being who has made some mistakes.

The United States appeals, arguing that no downward departure was appropriate because the district court found Reinke's case fell within the heartland of the applicable guideline, and even without that finding the district court did not identify any basis for departure that was not adequately accounted for in the guidelines. Even if some departure were permissible, the United States argues, the district court abused its discretion by ignoring the structure and methodology of the Sentencing Guidelines when arriving at the sentence.

II.

Congress authorized district courts to depart from the sentencing range prescribed by the Sentencing Guidelines if "the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that

should result in a sentence different from that described." 18 U.S.C. § 3553(b) (1994).

> Atypical cases were not adequately taken into consideration, and factors that may make a case atypical provide potential bases for departure. Potential departure factors 'cannot, by their very nature, be comprehensively listed and analyzed in advance,' 1995 U.S.S.G. § 5K2.0, of course. Faced with this reality, the Commission chose to prohibit consideration of only a few factors, and not otherwise to limit, as a categorical matter, the considerations that might bear upon the decision to depart.

Koon v. United States, 518 U.S. 81, 94 (1996). The district court must ascertain whether the Commission has adequately accounted for a particular circumstance by referring only to the Sentencing Guidelines, policy statements and official commentary. 18 U.S.C. § 3553(b). The Commission has forbidden the use of some circumstances as grounds for departure and discouraged or encouraged the use of others. Koon, 518 U.S. at 93-96. Not all possible grounds for departure were anticipated by the Commission in the Guidelines, policy statements or commentary. Id. at 94. However, the Commission has instructed the courts generally that they must not apply the Guidelines mechanistically, but instead should apply the touchstone of whether the offense before them falls within the "heartland" of the applicable Guideline:

> The Commission intends the sentencing courts to treat each guideline as carving out a "heartland," a set of typical cases embodying the conduct that each guideline describes. When a court finds an atypical case, one to which a particular guideline linguistically applies but where conduct significantly differs from the norm, the court may consider whether a departure is warranted.

USSG Ch.1, Pt. A, intro. comment. 4(b), quoted in Koon, 518 U.S. at 93.

In considering whether to depart, the sentencing court should ask the following questions:

> 1) What features of this case, potentially, take it outside the Guidelines' "heartland" and make of it a special, or unusual, case?
> 2) Has the Commission forbidden departures based on those features?
> 3) If not, has the Commission encouraged departures based on those features?
> 4) If not, has the Commission discouraged departures based on those features?

Koon, 518 U.S. at 95 (quoting United States v. Rivera, 994 F.2d 942, 949 (1st Cir. 1993)). If the Commission has either discouraged use of a particular factor or has already taken account of the factor in the guidelines sentencing range, then the sentencing court cannot base a departure on the factor unless "the factor is present to an exceptional degree" or unless something else "makes the case different from the ordinary case where the factor is present." Id. at 96. The Supreme Court in Koon further instructed:

> If a factor is unmentioned in the Guidelines, the court must, after considering the 'structure and theory of both relevant individual guidelines and the Guidelines taken as a whole, decide whether it is sufficient to take the case out of the Guideline's heartland. The court must bear in mind the Commission's expectation that departures based on grounds not mentioned in the Guidelines will be 'highly infrequent.' 1995 U.S.S.G. ch. 1, pt. A, p. 6.

Id. (citation omitted). Accord United States v. Kapitzke, 130 F.3d 820, 822 (8th Cir. 1997).

We review the district court's decision under the unitary abuse of discretion standard announced in Koon. United States v. McNeil, 90 F.3d 298, 300 and n.1 (8th Cir. 1996).

[A]n abuse of discretion occurs when a relevant factor that should have been given significant weight is not considered, when an irrelevant or improper factor is considered and given significant weight, or when all proper and no improper factors are considered, but the court in weighing those factors commits a clear error of judgment.

Id. at 300 (citation omitted). "A district court by definition abuses its discretion when it makes an error of law." Koon, 518 U.S. at 100. The sentencing court may also commit a clear error of judgment when it relies on factual circumstances that "do not accurately reflect the record" in the case. See McNeil, 90 F.3d at 302.

In adopting the abuse of discretion standard of review, Koon emphasized the distinct role reserved to the district court, which we may not usurp.

Whether a given factor is present to a degree not adequately considered by the Commission, or whether a discouraged factor nonetheless justifies departure because it is present in some unusual or exceptional way, are matters determined in large part by comparison with the facts of other Guidelines cases. District courts have an institutional advantage over appellate courts in making these sorts of determinations, especially as they see so many more Guidelines cases than appellate courts do.

518 U.S. at 98.

### III.

From the preceding discussion, it is obvious that the district court's departure decision ran into trouble at the first step because the district court found that Reinke's case fell within the heartland of the guideline. According to the Sentencing Commission and Koon, departures are only appropriate when a case falls outside the heartland. USSG Ch. 1, Pt. A, intro. comment. 4 (b); Koon, 418 U.S. at 92, 95.

Therefore, the court's pronouncement that the case fell within the heartland is inconsistent with its decision to depart.

Nor can we see that the ostensible error was somehow the result of superficial linguistic confusion overlying a foundation of sound reasoning. The first step in deciding if a case falls outside the heartland is to articulate the factors that make the case atypical. Koon, 418 U.S. at 95. If those factors are already taken into account by the guidelines, the court may not base a departure on them unless the factors are present to an exceptional degree or in some unusual form. Id. at 96.

In this case, the court mentioned three factors: (1) Reinke's lack of pecuniary gain from the crime; (2) her role in the offense; and (3) her expression of contrition. All three of these factors were taken into account by the guidelines. The district court did not observe that any of these factors was present in an unusual degree or form, and in fact, the court's factual findings suggest that none of them was present in a degree not anticipated in the guidelines.

The court's finding that Reinke received no "dollar or cash benefits of any substance" from the crime is in apparent conflict with the record evidence that Reinke made about $50,000 a year working for Rois. Moreover, the guideline for aiding, assisting, procuring, counseling or advising tax fraud specifically takes into account the extent to which the defendant made her living by the pattern of conduct that included the crime. USSG § 2T1.4(b)(1). Thus, a departure based on this factor would be appropriate only if the district court found the factor was present in some extraordinary form or degree not taken into account by the Commission. United States v. Kapitzke, 130 F.3d 820, 822 (8th Cir. 1997). The district court did not find that the lack of pecuniary benefit was extraordinary in this case, and extraordinariness is not apparent from the record. We cannot affirm a departure based on this factor. See United States v. King, 280 F.3d 886, No. 00-3105, slip op. at 5, 2002 WL 237445 (8th Cir. Feb. 20, 2002) (reversing district court's departure where neither findings

of fact nor the record evidence justified finding that case was outside heartland because of family situation).

Reinke's role in the offense is manifestly a factor that the Commission took into account in framing the Guidelines. USSG § 3B1.2 instructs the sentencing court to decrease the offense level if the defendant was a minimal or minor participant in the crime. The district court found that Reinke was not entitled to this reduction. The district court made no finding that this factor was present to a degree or in a form not anticipated by the Guidelines, nor is this apparent from the record. We therefore cannot affirm the departure on the strength of this factor. See United States v. Jimenez, No. 01-2290, 2002 WL 272289, at *3 (8th Cir. Feb. 27, 2002) (reversing district court's departure that was based, in part, on minimal participation).

Finally, Reinke's expression of contrition at her sentencing hearing would be a dubious ground for departure even if the court had found it extraordinary. The Guidelines take acceptance of responsibility into account, instructing the sentencing court to decrease the offense level if a defendant "clearly demonstrates acceptance of responsibility for his offense." USSG § 3E1.1(a). The district court did not give Reinke this decrease. In fact, Reinke received a two-level increase for obstruction of justice, which means that the case would have had to be extraordinary to justify even an acceptance of responsibility decrease in offense level, not to mention a downward departure. Id., comment. (n.4). The court said that if the increase had not been available, an upward departure would have been "authorized" to account for Reinke's obstruction of justice. Reinke's apology occurred after trial. She said, "I didn't mean to," and "[I]f I have done wrong, I will never be involved with anything like this again." Nor did the district court make any finding that there was any extraordinary aspect about Reinke's apology that would have led the court to conclude that her contrition took the case out of the heartland for her offense. The court stated only that Reinke had "indicated at least a degree of contrition."

-10-

Had the district court made findings that any of the three factors it relied on were present in extraordinary degree or form, a different issue would have been presented for our deferential review. See Kapitzke, 130 F.3d at 824 (district court's determination of whether facts are extraordinary is "fact-based judgment call that falls within the district court's sentencing discretion"). As it is, there are no findings of extraordinariness to defer to; the district court made factual findings that appear to contradict the notion that Reinke's case was extraordinary; and the court specifically held that the case fell within the heartland.

We are mindful of Justice Kennedy's admonition in Koon:

> It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue. We do not understand it to have been the congressional purpose to withdraw all sentencing discretion from the United States district judge. Discretion is reserved within the Sentencing Guidelines, and reflected by the standard of appellate review we adopt.

518 U.S. at 113.

The great discretion entrusted to the district judges in sentencing must be honored by appellate courts. At the same time, in order for us to perform our proper function of review, district judges must carefully articulate the reasons for departure, particularly where the waters are uncharted, as in this case. We appreciate the concern of the district judge for the unique study in human failings before him. The experienced district judge who presided at the trial also possesses a background as United States Attorney. The conclusions he reached were clearly the result of a deep concern about the sentencing decision, based upon what he had seen and heard at trial. Perhaps an articulation of the causes for his concerns would present a different landscape for our deferential review. We must vacate the present

sentence and remand to the district court for articulation of any reasons that could justify departure, or for resentencing.[1]

LAY, Circuit Judge, concurring.

In this particular case, the defendant has been given a six month sentence to be followed by two years of probation with 150 hours per year of community service and three years of supervised released. An experienced district judge who is much more familiar with the case than this court has determined that this is a fair and equitable sentence. I agree with the district judge. The only exception is that there is no basis within the Sentencing Guidelines (the law) for the district court to depart downward. On that basis, the defendant, rather than looking forward to "graduating" from her sentence at a community facility in a few days, must face the alternative of going to prison for some thirty-one to forty months.

This case demonstrates the futility of guideline sentencing. The human factor is totally removed. The guidelines under these circumstances are extremely punitive. Circuit judges have made this plea on previous occasions, but it has fallen on deaf ears. The worst tragedy of the last fifty years in judicial administration has been the passage of the Sentencing Guidelines. Our hands are now tied as, I am afraid, are the hands of the district court as well.

I ask that this opinion be sent by the clerk's office of the Eighth Circuit Court of Appeals to the members of the Sentencing Guideline Commission as well as to the Senate Judiciary Committee.

---

[1]In light of our disposition, we need not reach the government's alternative argument that the district court failed to follow the proper methodology in determining the extent of the departure.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT