**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**SEP 19 2003**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

## UNITED STATES COURT OF APPEALS
## TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

Plaintiff-Appellant,

v.

No. 02-2147

ELIEZER REYES-RODRIGUEZ,

Defendant-Appellee.

---

**Appeal from the United States District Court
for the District of New Mexico
(D.C. No. CR-01-786 MV)**

---

David N. Williams, Assistant United States Attorney (David C. Iglesias, United States Attorney, with him on the briefs), Albuquerque, New Mexico, for Plaintiff-Appellant.

Jane Greek, Assistant Federal Public Defender (Stephen P. McCue, Federal Public Defender, and Shari Lynn Allison, Research and Writing Specialist, with her on the brief), Las Cruces, New Mexico, for Defendant-Appellee.

---

Before **SEYMOUR**, **HENRY** and **LUCERO**, Circuit Judges.

---

**SEYMOUR**, Circuit Judge.

Eliezer Reyes-Rodriguez, a citizen of Mexico, pled guilty to illegally re-entering the United States following deportation for an aggravated felony in violation of 8 U.S.C. § 1326(b)(2). Mr. Reyes-Rodriguez's offense level was originally calculated to be 21, which equaled a sentence of seventy to eighty-seven months when coupled with his criminal history category V. The district court departed downward eight levels to 13, resulting in a range of imprisonment from thirty to thirty-seven months, concluding the departure was warranted by Mr. Reyes-Rodriguez's extraordinary family circumstances. The court sentenced Mr. Reyes-Rodriguez to thirty months imprisonment, followed by two years of unsupervised release during which Mr. Reyes-Rodriguez would be deported to Mexico. The government appealed, challenging the court's downward departure. We reverse and remand.

## I

Prior to his arrest, Mr. Reyes-Rodriguez worked in the United States as a laborer and construction worker, and sent every other paycheck to his parents in southern Mexico for their support. The remaining paychecks were used to support himself, his wife, and their two children. In sentencing Mr. Reyes-Rodriguez, the district court noted that the area where Mr. Reyes-Rodriguez's parents live is "extremely rural, and people live in poverty that we can't even imagine," Aplt. App. at 71, and the house in which his parents live is a "one-

room shack with no running water, no heat, no electricity, and . . . a dirt floor."
*Id*. at 72-73. Medical records indicated Mr. Reyes-Rodriguez's mother, aged seventy-two, suffers from congestive cardiac insufficiency, a chronic condition requiring treatment for the remainder of her life. Her treatment was financed by Mr. Reyes-Rodriguez's paychecks. Likewise, his father, who is in his early eighties, "is virtually blind and suffers from seizures due to a head injury, which also has caused psychological impairments, significant memory deficits, and periods of confusion." *Id.* at 72. The court further noted that the "level of medical care for the poor in Mexico is still . . . dismally insufficient, and poor people that cannot get medical care, especially in remote villages, simply don't get it, and they just die," *id.* at 70, and that "[w]ithout Mr. Reyes' assistance, [his parents] are unable to provide for themselves the basic necessities, or any medical care." *Id.* at 73.

Mr. Reyes-Rodriguez indicated that upon his return to Mexico, he and his family planned to reside with his parents. They would survive on what he could plant and grow on the land, or what he could earn working in construction. He also noted he had siblings who lived near his parents, but that they had their own families, earned very little, and could "hardly help [his] parents." *Id.* at 64.

Based on these findings, the district court determined a downward departure was warranted in sentencing Mr. Reyes-Rodriguez. The court stated

"[t]he fact that his brothers and sisters in Mexico may also be able to assist [in caring for his parents] doesn't detract from the need [his parents] have for continued support" from Mr. Reyes-Rodriguez. *Id.* at 71-72. Likewise, the court reasoned that Mr. Reyes-Rodriguez' inability to "send dollars home also doesn't detract from the fact that he can contribute in a meaningful way to the medical treatment, medical expenses, and basic necessities for his parents." *Id.* at 72.

## II

The Sentencing Guidelines dictate that "[f]amily ties and responsibilities . . . are not ordinarily relevant in determining whether a sentence should be outside the applicable guideline range." U.S.S.G. § 5H1.6. Because family circumstances departures are disfavored under the guidelines, "a district court may depart based on family circumstances 'only if the factor is present to an exceptional degree or in some other way makes the case different from the ordinary case where the factor is present.'" *United States v. Gauvin*, 173 F.3d 798, 807 (10th Cir. 1999) (quoting *Koon v. United States*, 518 U.S. 81, 96 (1996)). The burden is on a defendant to provide evidence sufficient to support a conclusion that his family circumstances are outside the heartland. *United States v. Archuleta*, 128 F.3d 1446, 1449 (10th Cir. 1997).

"We review departures from the guidelines under a unitary abuse-of-discretion standard, giving deference to essentially factual questions and plenary

review to those that are essentially legal." *United States v. Concha*, 294 F.3d

1248, 1251 (10th Cir. 2002), *cert. denied*, 123 S.Ct. 949 (2003). However, even

though

> we give substantial deference to a district court's decision that a
> discouraged factor justifies departure because it is present in some
> unusual or exceptional way, we compare the circumstances given for
> departure in the defendant's case to the circumstances in existing
> reported Guidelines cases to ensure the district court has not abused
> its discretion.

*United States v. King*, 280 F.3d 886, 889 (8th Cir.), *cert. denied*, 123 S.Ct. 402

(2002). Despite the admittedly difficult facts presented in this case, we do not

believe they support a downward departure for extraordinary family circumstances

under governing law.

Determining "[w]hat family circumstances are exceptional to a degree more

than those in the heartland of cases" is a "most difficult inquiry." *Gauvin*, 173

F.3d at 807.[1] Here, the difficulty is compounded, for our focus cannot be on

---

[1]We reject the government's argument that the heartland for this case "consists of illegal aliens who have been convicted of reentering the United States after they have been convicted of an aggravated felony, and subsequently have been deported." Aplt. Br. at 18. Family circumstances downward departure cases examine the defendant's specific circumstances in comparison to similar family circumstances presented by other defendants, regardless of their underlying convictions. *See*, *e.g.*, *United States v. King*, 280 F.3d 886, 889 (8th Cir.), *cert. denied*, 123 S.Ct. 402 (2002) (family circumstances of defendant convicted of money laundering compared to family circumstances of defendants convicted of drug and gun charges, child pornography, and money laundering); *United States v. Pereira*, 272 F.3d 76, 81-82 (1st Cir. 2001) (tax fraud defendant compared with
(continued...)

whether the loss of Mr. Reyes-Rodriguez's pre-incarceration support to his parents is so extreme as to place this case outside the heartland of family circumstances cases. Upon his release from prison and return to Mexico, Mr. Reyes-Rodriguez will not be able to provide monetary support for his parents to the extent he did prior to his conviction because that support was derived from his illegal presence and employment in the United States. Therefore, we must examine whether the support and care Mr. Reyes-Rodriguez can provide to his parents after his incarceration is so extraordinary as to warrant a downward departure. Based on our review of case law from this circuit and elsewhere, we determine that despite the genuinely disheartening facts regarding Mr. Reyes-Rodriguez's family, his situation does not fall outside the heartland of family circumstances cases.

Tenth Circuit case law indicates a downward departure for family

---

[1](...continued)
defendants convicted of drug and gun charges, conspiracy, and price fixing); *United States v. Gauvin*, 173 F.3d 798, 807-08 (10th Cir. 1999) (defendant convicted of various assault charges had family circumstances compared to defendants guilty of drug and gun related charges); *United States v. Rodriguez-Valarde*, 127 F.3d 966, 969 (10th Cir. 1997) (family circumstances claim rejected on ground defendant had not "shown circumstances [facing his minor children were] substantially different than those facing the minor children of *any single parent* who is about to be incarcerated") (emphasis added); *United States v. Rivera*, 994 F.2d 942, 954 (1st Cir. 1993) (family circumstances of defendant convicted of drug possession with intent to distribute compared with defendants convicted of assault, bribery, theft, and drug charges).

circumstances is warranted where the "defendant [is] the only individual able to provide the assistance a family member needs." *United States v. McClatchey*, 316 F.3d 1122, 1131 (10th Cir. 2003). *See also Gauvin*, 173 F.3d at 808 (downward departure warranted where no extended family existed to assist defendant's wife in caring for four young children, wife was working two jobs requiring her to be away from home for sixteen hours a day, wife ran risk of losing car because of inability to make car payments, and wife ran risk of losing children because she was unable to provide them with sufficient care); *United States v. Pena*, 930 F.2d 1486, 1495 (10th Cir. 1991) (downward departure warranted because defendant's behavior was aberrant and defendant was only means of support for two infant children). Other jurisdictions provide similar guidance. *See United States v. Pereira*, 272 F.3d 76, 83 (1st Cir. 2001) ("As long as there are feasible alternatives of care that are relatively comparable to what the defendant provides, the defendant cannot be irreplaceable."); *United States v. Sweeting*, 213 F.3d 95, 108-09 (3d Cir. 2000) (downward departure inappropriate for defendant whose son suffered from Tourette's Syndrome where evidence did not indicate defendant was only person who could care for son); *United States v. Allen*, 87 F.3d 1224, 1226 n.2 (11th Cir. 1996) (downward departure unwarranted where defendant's husband and adult son were able to help care for father who suffered from Alzheimer's and Parkinson's diseases); *United States v. Haversat*, 22 F.3d 790,

797 (8th Cir. 1994) (downward departure warranted where defendant played "irreplaceable" role in treatment of severely mentally ill spouse and spouse's doctor had "grave clinical concerns that [wife's] medical management could be safely continued without the ongoing presence of her spouse"); *United States v. Sclamo*, 997 F.2d 970, 974 (1st Cir. 1993) (downward departure warranted where defendant played "critical and unique" role in stepson's mental health treatment); *United States v. Gaskill*, 991 F.2d 82, 86 (3d Cir. 1993) (degree of care required for severely mentally ill wife, lack of close supervision of wife by any other family member, and risk to wife's well being by defendant's incarceration were among factors district court should consider on remand for downward departure sentencing determination). *But see United States v. Alba*, 933 F.2d 1117, 1122 (2d Cir. 1991) (downward departure affirmed where defendant's disabled father depended on him for help in and out of wheelchair; court did not question whether defendant's wife could help).

We have no doubt that upon his release from prison, the support and care Mr. Reyes-Rodriguez will provide for his parents will be important and significant, given his commendable care in the past. We recognize, as did the district court, the extreme poverty in which Mr. Reyes-Rodriguez's parents live and the limited medical care available to them. We have discovered no cases addressing the existence of poverty at the level presented in this case.

Nonetheless, the difficult circumstances in which Mr. Reyes-Rodriguez's parents find themselves do not undermine our conclusion that the care and support Mr. Reyes-Rodriguez will provide to his parents once he returns to Mexico is not so specialized and unique that only he can provide it.

Mr. Reyes-Rodriguez admitted, and the district court acknowledged, that he has siblings who live near his parents. While his siblings are poor and have their own families to support, Mr. Reyes-Rodriguez has not offered evidence indicating they are wholly unable to provide care and assistance to their parents. *See Pereira*, 272 F.3d at 83 ("Though it may be that none of [defendant's] siblings will be able to provide the same level of parental care, this fact alone is not sufficient to deem [defendant] irreplaceable."). The district court pointed out that while Mr. Reyes-Rodriguez "won't be able to send dollars home," he would still be able to "contribute in a meaningful way to the medical treatment, medical expenses, and basic necessities for his parents." Aplt. App. at 72. However, contributing to his parent's care in a "meaningful way" is not so extraordinary as to place this case outside the heartland of other family circumstances cases. *See McClatchey*, 316 F.3d at 1132-33 (defendant could not show his constant presence in home was indispensable part of son's care or that no alternative care givers existed); *Sweeting*, 213 F.3d at 107-08 (nature and type of care for son suffering from Tourette's Syndrome not so unique that it could only be performed

by defendant, where defendant made arrangements with friends to care for son). We are thus constrained to hold the family circumstances presented by Mr. Reyes-Rodriguez are not sufficiently outside the heartland to support a downward departure in his sentence. The district court abused its discretion in concluding to the contrary.

Accordingly, we **REVERSE** the district court and **REMAND** for re-sentencing.