**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JAN 7 2004**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

vs.

HECTOR EDUARDO GONZALEZ-
GARCIA,

    Defendant - Appellant.

No. 03-2031
(D.C. No. CR-02-1051 LH)
(D.N.M.)

---

**ORDER AND JUDGMENT**[*]

---

Before **KELLY**, **McKAY**, and **O'BRIEN**, Circuit Judges.

Defendant-Appellant Hector Eduardo Gonzalez-Garcia pleaded guilty to

one count of illegally reentering the United States after being deported following

a conviction for an aggravated felony and 8 U.S.C. § 1326(a)(1), (a)(2), and

(b)(2). He was sentenced to a term of imprisonment of forty-one months,

followed by three years of supervised release. Mr. Gonzalez-Garcia now appeals,

contending the government breached the plea agreement by not supporting his

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

motion for a downward departure and by not making express recommendations at the sentencing hearing. We have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a) and affirm.

Background

Mr. Gonzalez-Garcia was charged with unlawful reentry after previously having been deported from the United States following a conviction for sexual battery. I Aplt. App. 9. The sexual battery conviction constitutes an aggravated felony under 8 U.S.C. § 1101(a)(43). Mr. Gonzalez-Garcia pled to the indictment. Within the plea agreement, the parties stipulated that Mr. Gonzalez-Garcia was entitled to a three-level reduction from the base offense level due to acceptance of personal responsibility. I Aplt. App. 33 at 3, ¶ 8. The plea agreement stated "that the adjusted offense Level should be twenty-one (21), pursuant to Rule 11(e)(1)(B) of the Federal Rules of Criminal Procedure." Id. at 2, ¶ 5. The parties also agreed that "any sentence imposed by [the district court in this case] shall be concurrent with any sentence imposed by the Tulsa County District Court, Tulsa Oklahoma." Id. In paragraph six, the agreement stated:

> 6.     It is expressly understood and agreed by and between the Defendant and the United States that:
>      (a)    The United States has made, and will make, NO AGREEMENT to approve, to oppose, or not to oppose pursuant to Rule 11(e)(1)(B), Fed. R. Crim. P., any request made by the Defendant or on behalf of the Defendant for a particular sentence in

this case.

Id. at 3, ¶ 6. Under the heading "GOVERNMENT'S AGREEMENT," the plea agreement stated:

> Provided that the Defendant fulfills his obligations as set out above, the United States agrees that it will not bring additional charges against the Defendant arising out of the Defendant's conduct now known to the United States Attorney's Office for the District of New Mexico, and to recommend the Defendant receive the minimum possible sentence under the United States Sentencing Guidelines.

Id. at 4-5, ¶ 10 (emphasis added). Pursuant to this plea agreement, Mr. Gonzalez-Garcia pleaded guilty to the indictment before a magistrate judge. I Aplt. App. Supp. at 13-14.

The presentence report ("PSR") indicated a total offense level of twenty-one and a criminal history category of II. II Aplt. App. at 7. The PSR set forth a recommended guideline range of 41-51 months. Id. The PSR also included the government's recommendation regarding Mr. Gonzalez-Garcia's sentence:

> The defendant stipulated to an offense level of twenty-one pursuant to 11(e)(1)(B). Without this plea agreement and its downward adjustments, the offense level would have been 24. An offense level of 24 and a criminal history category of II, establishes a guideline imprisonment range of 57-71 months. In addition, the Government will recommend that the defendant receive the minimum possible sentence under the guidelines.

Id. at 8 (emphasis added).

Prior to sentencing, Mr. Gonzalez-Garcia filed a motion for downward departure under U.S.S.G. § 5K2.0. See I Aplt. App. 35, 36. That section

- 3 -

provides that the sentencing court "may impose a sentence outside the range established by the applicable guidelines, if the court finds 'that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described.'" U.S.S.G. § 5K2.0(a) (quoting 18 U.S.C. § 3553(b)). Mr. Gonzalez-Garcia argued a downward departure was warranted based on the extreme hardship the proposed guidelines would cause due to his family responsibilities and severe diabetes. I Aplt. App. 36 at 2-3. He provided numerous letters to the court from his family in support of his motion. See Aplt. Addendum. In an addendum to the PSR, the probation officer concluded "it does not appear [Mr. Gonzalez-Garcia's] family responsibilities are sufficient or extraordinary to meet the criteria for downward departure." II Aplt. App., Addendum at 2.

At the sentencing hearing, Mr. Gonzales-Garcia's counsel noted that it was his understanding that the government "takes no position" with respect to the motion for downward departure. III Aplt. App. at 4. The government remained silent at the sentencing and did not verbalize its recommendation that Mr. Gonzalez-Garcia receive the minimum possible sentence under the guidelines. Mr. Gonzalez-Garcia did not object to the government's failure to support his motion for a downward departure or verbalize its recommendation. The court

- 4 -

made no specific mention of the government's recommendation, although the court did adopt the presentence report's factual findings and guideline applications. Id. at 9. The court denied Mr. Gonzalez-Garcia's motion for a downward departure, and he was sentenced to a term of forty-one months imprisonment, the lowest sentence in the guideline range recommended in the presentence report. Id.

## Discussion

Mr. Gonzalez-Garcia argues the government violated the plea agreement by failing to recommend the lowest possible sentence, including support for his downward departure motion, and failing to make the recommendation expressly. "A claim that the government has breached a plea agreement is a question of law we review de novo, even where, as here, the defendant failed to object at the time of the alleged breach." United States v. Werner, 317 F.3d 1168, 1169 (10th Cir. 2003); see also United States v. Guzman, 318 F.3d 1191, 1195 (10th Cir. 2003); United States v. Peterson, 225 F.3d 1167, 1170 (10th Cir. 2000).

Where the government obtains a guilty plea that "rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled" to maintain the integrity of the plea. Santobello v. New York, 404 U.S. 257, 262

(1971); see also Werner, 317 F.3d at 1170; United States v. Brye, 146 F.3d 1207, 1210 (10th Cir. 1998) ("Because a government that lives up to its commitments is the essence of liberty under law, the harm generated by allowing the government to forego its plea bargain obligations is one which cannot be tolerated.") (internal quotation marks and citations omitted).  Because plea agreements are contracts, we are guided by general principles of contract law when analyzing the government's obligations under a plea agreement.  See Guzman, 318 F.3d at 1195-96; Brye, 146 F.3d at 1210.  "Thus, in assessing whether the government has breached the agreement, we look first to the express terms of the agreement, and if applicable, we construe any ambiguities against the government as the drafter of the agreement."  Werner, 317 F.3d at 1170; see also Guzman, 318 F.3d at 1195; Brye, 146 F.3d at 1210.  We apply a two-step process to determine whether a breach has, in fact, occurred: "(1) we examine the nature of the government's promise; and (2) we evaluate this promise in light of the defendant's reasonable understanding of the promise at the time the guilty plea was entered."  Brye, 146 F.3d at 1210.

A.  Support of Downward Departure Motion

The express language of the plea agreement guides us in determining the nature of the government's promise.  The plea agreement included an agreement on the part of the government to "recommend the Defendant receive the minimum

possible sentence under the United States Sentencing Guidelines." I Aplt. App. 33 at 5, ¶ 10. Mr. Gonzalez-Garcia argues that the government's agreement to "recommend the Defendant receive the minimum possible sentence under the United States Sentencing Guidelines" obligated the government "at the very least . . . to note that it recommended the granting of the sought-after downward departure, as long as it was permissible under the Guidelines." Aplt. Br. at 21. The government, however, argues that this language only obligated the government to recommend the lowest sentence possible within the applicable guideline range.

Mr. Gonzalez-Garcia argues that the reference to the "United States Sentencing Guidelines" includes the downward departure provisions upon which he relied in his downward departure motion. He therefore contends the minimum possible sentence under the guidelines includes the minimum possible sentence under all the downward departure provisions. Mr. Gonzalez-Garcia thus interprets this provision to obligate the government to recommend all legally supportable downward departures. While it is true the government has used the phrase "the low end of the applicable guideline range" to describe its obligations regarding a sentence recommendation in other instances, see, e.g., United States v. Werner, 317 F.3d 1168, 1169 (10th Cir. 2003); United States v. Myers, 32 F.3d 411, 412 (9th Cir. 1994), an analysis of the language used in this instance cuts

both ways.  See United States v. De la Fuente, 8 F.3d 1333, 1338-39 (9th Cir.

1993).  The government used broader language in this agreement, and therefore

arguably the phrase required the government to do more than merely recommend a

sentence at the low end of the guideline range.  However, the phrase "minimum

possible sentence under the United States Sentencing Guidelines" is a very

inexact and unclear way for the government to commit its support for a downward

departure.  When the government has agreed to support a downward departure, it

has stated its obligation to do so.  See United States v. Vargas, 925 F.2d 1260,

1266 & n.6 (10th Cir. 1991) (discussing government's obligation under the

language of plea agreement, which stated "If the government, in its sole and

absolute discretion, so determines that such cooperation is in fact substantial

assistance, the Government will move for departure pursuant to § 5K1.1 . . . .");

see also United States v. Huang, 178 F.3d 184, 187 n.2 (3d Cir. 1999).

The defendant's interpretation of the government's responsibilities under

the plea agreement is directly at odds with the nature of the downward departure

provisions.  Departures from the guidelines are only appropriate in "unusual" and

"atypical" cases that depart from the "heartland" of cases the guidelines cover.

See U.S.S.G., ch. 1, pt. A(4)(b) (Departures).  Downward departures are the

exception rather than the rule.  See Prosecutorial Remedies and Tools Against the

Exploitation of Children Today Act of 2003 (PROTECT Act), Pub. L. No. 108-21,

117 Stat. 650, 675 (directing Sentencing Commission to review the current grounds for downward departures and promulgate appropriate amendments "to ensure that the incidence of downward departures are substantially reduced"). In particular, family circumstances departures are disfavored under the guidelines, and a district court may depart "only if the factor is present to an exceptional degree or in some other way makes the case different from the ordinary case where the factor is present." United States v. Reyes-Rodriguez, 344 F.3d 1071, 1073 (10th Cir. 2003) (quoting United States v. Gauvin, 173 F.3d 798, 807 (10th Cir. 1999)). The use of downward departures has come under even more scrutiny with the enactment of the PROTECT Act, which has raised the standard of review in sentencing-departure cases from a "unitary abuse of discretion standard" to application of a de novo standard of review. United States v. Jones, 332 F.3d 1294, 1299 (10th Cir. 2003). It would be antithetical to this policy to require the government to support all permissible downward departures whenever the language is arguably ambiguous with regard to the government's obligations. We will not read in such an obligation on the part of the government where there is not clear language to support such a conclusion.

Even if we ignore this strong policy consideration and assume that the phrase "minimum possible sentence under the United States Sentencing Guidelines" creates ambiguity regarding the government's obligation, we need not

apply the rule that ambiguities in the plea agreement must be construed against its drafter–in this case the government. United States v. Hawley, 93 F.3d 682, 690 (10th Cir. 1996). Any arguable ambiguity as a result of this language is resolved by the remainder of the agreement. Effect must be given to every provision of an agreement, see Parker v. United States, 448 F.2d 793, 797 (10th Cir. 1971), and it must be construed as a whole, see FDIC v. Canfield, 967 F.2d 443, 446 (10th Cir. 1992). A construction of paragraph ten that requires the government to support downward departure motions not included in the plea agreement would render paragraph six meaningless. We will not construe the language of the agreement "in a way that renders words or phrases meaningless, redundant, or superfluous." See Bridger Coal Co./Pacific Minerals, Inc. v. Dir., Office of Workers' Comp. Programs, 927 F.2d 1150, 1153 (10th Cir. 1991). Rather, "[i]t is a cardinal rule of construction . . . that effect should be given, if possible, to every word, phrase, clause, and sentence." Salt Lake County v. Utah Copper Co., 93 F.2d 127, 133 (10th Cir. 1937).

Paragraph six of the plea agreement states that the government made "NO AGREEMENT to approve, to oppose, or not to oppose . . . any request made by the Defendant . . . for a particular sentence in this case." I Aplt. App. 33 at 3, ¶ 6. If the government's obligation to recommend the "minimum possible sentence" included support for any permissible sought-after departures, such an

obligation would require the government to support the requests by the defendant for a lower sentence. Such a construction directly contradicts the language in paragraph six and would render it superfluous. Because we must give meaning to every clause within the plea agreement, we find the government expressly made no agreement to support Mr. Gonzalez-Garcia's downward departure motion.

This conclusion is supported by the absence of language regarding a motion for downward departure based on extreme hardship. The parties did include a stipulation in the plea agreement with regard to a downward adjustment for acceptance of personal responsibility. Id. at 3, ¶ 8(a). However, there was no reference to any downward departure motions except to the extent the government made no agreement to support any such motions in paragraph six. Because there is no language regarding the downward departure, the express language of the agreement does not support Mr. Gonzalez-Garcia's claims. See United States v. Reyes Pena, 216 F.3d 1204, 1212 (10th Cir. 2001). The fact that the parties included a paragraph regarding a downward adjustment for acceptance of responsibility and not for a downward departure for extreme hardship suggests there was no such promise on the part of the government to support the downward departure motion.

This conclusion is strengthened when the promise is evaluated in light of Mr. Gonzalez-Garcia's reasonable understanding of the promise at the time the

guilty plea was entered. See Brye, 146 F.3d at 1212 (analyzing statements at the plea hearing to evaluate the understanding of the parties). At the time of the plea hearing, the court inquired into what benefits Mr. Gonzalez-Garcia would receive as a result of entering into the plea agreement. I Aplt. App. Supp. at 8-10. In response, Mr. Gonzalez-Garcia's counsel stated "The Agreement, is signed as to the defendant, Mr. Gonzalez Garcia's ability to file a motion for downward departure and it allows him to do that. Whether or not that motion will be granted, he understands it is completely in the discretion of the sentencing judge." Id. at 9. Counsel also noted that the parties agreed that the sentence would be concurrent with any sentence imposed in Oklahoma. Id. When listing the benefits to the defendant, counsel never mentioned that the government would support its motion for a downward departure. Rather counsel's comments illustrate that it was Mr. Gonzalez-Garcia's understanding that the agreement merely allowed for such a motion.

Counsel's comments at sentencing also shed light on Mr. Gonzalez-Garcia's understanding of the agreement between the parties. See Brye,146 F.3d at 1211 (analyzing statements at sentencing to decipher understanding of promises at the time of the plea). His counsel commented as follows:

> The normal course of events, Your Honor, as the court knows, in reentry cases, is that the government agrees to an 11(e)(1)(C) sentence of a two-level departure from the guideline. The reason they didn't do it in this case is because where there has been a–where

- 12 -

the aggravated felony is not a drug case but–or a transporting case, but it's a case of violence, that they do not agree to the two-level downward departure, 11(e)(1)(C). But Mr. Tierney agreed [not to do] an 11(e)(1)(C) at a level 21, but to do an 11(e)(1)(B) agreement so that–giving us an opportunity to move the Court for a downward departure, which we did.

III Aplt. App. at 4. With regard to the government's position, Mr. Gonzalez-Garcia's counsel stated "it's my understanding that the government, the United States, takes no position with respect to our motion for downward departure." Id. at 3-4 (emphasis added). Thus it was counsel's understanding that the government would allow the opportunity for the motion, but that it took no position with regard to the motion. Counsel did not assert that the government agreed to support any permissible downward departures in order to achieve the absolute lowest attainable sentence under the guidelines. Counsel's comments illustrate that Mr. Gonzalez-Garcia's reasonable understanding at the time he entered into the plea was that he had the opportunity to make such a motion, but that it would neither be approved nor opposed by the government.

Finally, Mr. Gonzalez-Garcia did not object to the government's failure to support the downward departure motion at the time of sentencing. "His failure to object at sentencing is but further evidence that his expectations of the government were satisfied." Werner, 317 F.3d at 1170. The government's agreement to recommend the lowest possible sentence under the sentencing guidelines therefore meant merely that it would recommend the lowest possible

- 13 -

sentence within the applicable guideline range.  This understanding perfectly comports with the express language of the plea agreement, including paragraph six.

The government's promise to recommend the lowest possible sentence under the sentencing guidelines did not include an obligation to support the downward departure motion.[1]  The government was merely obligated under the agreement to recommend the minimum possible sentence within the appropriate guideline range.  Because the government was not obligated to support Mr. Gonzalez-Garcia's motion, the government's failure to support the motion was not a breach of the plea agreement.

B.  Verbalization of Recommendation At Sentencing Hearing

Mr. Gonzalez-Garcia also argues the government agreed to verbalize its recommendation before the court at the sentencing hearing.  In United States v. Smith, 140 F.3d 1325, 1327 (10th Cir. 1998), this court clearly stated that "the

---

[1]Although when read as a whole we believe the nature of the agreement between the parties can be deciphered, the language in this agreement is not a model of clarity.  Such speculation on appeal over what was intended by the parties at the time the plea agreement was entered into could easily be resolved by more careful lawyering at the time the plea agreements are drafted.  We have an "expectation that the government draft plea agreements with particular care and precision to avoid exactly the type of definitional pitfalls we encounter here." Carnine v. United States, 974 F.2d 924, 928 (7th Cir. 1992).  We trust that the government will consider our comments and strive to draft more clear and complete plea agreements in the future.

term 'recommendation' in a plea agreement does not require the prosecutor to allocute in favor of specific adjustments in the defendant's sentence if the recommendations are contained in the PSR and the prosecutor does not allocute against an agreed-upon adjustment." We stated that

> defendants should be advised that when there is no specific statement
> in a plea agreement that the government must allocute in favor of its
> recommendation(s) at a sentencing hearing, the government can
> satisfy the term 'recommendation' by having its recommendations
> included in the PSR, which is then called to the attention of the
> sentencing court.

Id. This "straightforward holding" was reaffirmed in Werner, 317 F.3d at 1171.

The plea agreement does not require that the government allocute in favor of its recommendation at sentencing. Additionally, the PSR contained the government's recommendation that Mr. Gonzalez-Garcia receive the minimum possible sentence under the sentencing guidelines, and the plea agreement itself was attached to the PSR. II Aplt. App. at 8. Although the court did not specifically mention the recommendation at sentencing, it did adopt the presentence report's factual findings and guideline applications. III Aplt. App. at 9. Based on these facts and our assumption that the district judge did not sentence Mr. Gonzalez-Garcia without awareness of the plea agreement, Werner, 317 F.3d at 1170, the government has satisfied its obligation by including its recommendation in the PSR.

Mr. Gonzalez-Garcia attempts to distinguish this case from Smith and

Werner based on the fact the recommendation was contingent on Mr. Gonzalez-Garcia fulfilling his obligations under the plea, a magistrate rather than the district court judge presided over the plea proceedings, and the government did not support the downward departure motion. Aplt. Br. at 16-18. However, Smith and Werner are directly on point. As the court noted in Werner, the court's holding in Smith was clear and factors such as passage of time and the precise language of the agreement were not legally relevant. 317 F.3d at 1170-71. We find the defendant's attempts to distinguish the holdings in this case similarly inapposite. The government's recommendation was included in the PSR, and it therefore met its obligation under the plea agreement.

AFFIRMED.

Entered for the Court

Paul J. Kelly, Jr.
Circuit Judge