**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**August 29, 2005**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

AGNES REED,

    Defendant-Appellant.

No. 04-3415

(D.C. No. 04-CR-20041-01-JWL)

(D. Kan.)

---

**ORDER AND JUDGMENT** [*]

---

Before **BRISCOE, LUCERO,** and **MURPHY** , Circuit Judges.

---

Agnes Reed pled guilty to, and was convicted of, one count of distributing

methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(c), and

860(a), and 18 U.S.C. § 2. She appeals her forty-six month sentence in light of

United States v. Booker, ___ U.S. ___, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005).

Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we conclude that the

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

government has not met its burden of proving that the district court's <u>Booker</u> error was harmless and we REMAND for resentencing.[1]

## I.

After a series of seven controlled buys in 2003 conducted by a Kansas Bureau of Investigation Agent and a confidential informant (CI), Mrs. Reed was charged in an Indictment with eight counts of distributing methamphetamine within 1,000 feet of a public secondary school, in violation of 21 U.S.C. §§ 841(a)(1) and 860(a) and 18 U.S.C. § 2. Pursuant to a plea agreement with the government, Mrs. Reed pled guilty to Count 1 of the Indictment on July 6, 2004. At her plea hearing Mrs. Reed admitted that she was accountable for 131.06 grams of methamphetamine — the amount sold to the Agent and CI, plus the amount subsequently recovered from a search of her residence.

The presentence investigation report (PSR), however, determined that in addition to the quantities of methamphetamine she admitted to in her plea, Mrs. Reed was responsible for 1,190.7 grams of methamphetamine that she allegedly sold to the CI from 1999 through 2003. The PSR concluded that with the additional amount of methamphetamine Mrs. Reed's total offense level was 29

---

[1] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1.9(G). The case is therefore ordered submitted without oral argument.

and her criminal history category was I, resulting in a range of imprisonment of 87–108 months. Mrs. Reed objected to the PSR's inclusion of the additional 1,190.7 grams, citing the Supreme Court's decision in Blakely v Washington, 542 U.S. 296 (2004), and noting that without the additional quantities the resulting range of imprisonment would have been 46–57 months. ROA, Vol. 2 at 22–23.

At sentencing, Mrs. Reed again raised Blakely arguments in objecting to the enhancements. She also moved for downward departures based upon her age, health and the sentencing disparity between her prospective sentence and the sentences imposed on her co-defendants prosecuted in state court, stating that each factor put her case outside of the "heartland" of the guideline range for similar cases. Pursuant to the plea agreement, the government also filed a motion for a six-level downward departure for substantial assistance to authorities under United States Sentencing Guidelines (U.S.S.G.) § 5K1.1, and requested a sentence at the low end of the guideline range. The resulting guideline range after the inclusion of the § 5K1.1 departure was 46–57 months.[2] The district court rejected Mrs. Reed's Blakely challenge, explaining that "until the Supreme Court tells us to the contrary, I am going to continue to apply the guidelines." ROA, Vol. I, Doc. 46 at 4. The district court then applied the PSR's enhancements and denied

---

[2] We note that without the district court's enhancements based upon the additional 1,190.7 grams of methamphetamine, Mrs. Reed's guideline range after applying the § 5K1.1 departure would have been 24–30 months.

3

Mrs. Reed's motion for downward departures. The district court did grant the government's § 5K1.1 motion, finding it "generous" but "appropriate" for the circumstances surrounding her assistance. Id. at 35. It then sentenced Mrs. Reed at the bottom of the guideline range to a term of imprisonment of 46 months, a term of supervised release of three years and a $100 special assessment.

While Mrs. Reed's appeal was pending, the Supreme Court issued its decision in Booker, which held that Blakely applies to the Sentencing Guidelines so that "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." 125 S.Ct. at 756. Mrs. Reed now argues that her sentence should be reversed and remanded in light of Booker because she did not admit facts regarding relevant conduct used to increase her sentence.

## II.

Mrs. Reed contends, and the government concedes, that the district court committed constitutional Booker error when it increased her offense level by four levels based on the factual finding that she had sold an additional 1,190.7 grams of methamphetamine to the CI from 1999 through 2003.[3] The parties also agree that Mrs. Reed properly preserved her Booker claim by timely raising her Blakely

---

[3] We express no opinion on the validity of the government's concession.

objections in the district court. The government contends, however, that the error was harmless.

Fed.R.Crim.P. 52(a) provides that "[a]ny error, defect, irregularity, or variance that does not affect substantial rights must be disregarded." In the context of a misapplication of the guidelines, "the Supreme Court held that 'once the court of appeals has decided that the district court misapplied the Guidelines, a remand is appropriate unless the reviewing court concludes, on the record as a whole, that the error was harmless, i.e., that the error did not affect the district court's selection of the sentence imposed.'" United States v. Labastida-Segura, 396 F.3d 1140, 1142–43 (10th Cir. 2005) (quoting Williams v. United States, 503 U.S. 193, 203 (1992)). Where the error was preserved in the district court, the government bears the burden of demonstrating that error was harmless. United States v. Riccardi, 405 F.3d 852, 875 (10th Cir. 2005). Furthermore, as the government points out in its brief, because the error is of constitutional dimension, the government must establish that the error was harmless beyond a reasonable doubt. See Chapman v. California, 386 U.S. 18, 24 (1967) ("[B]efore a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt.").

The government argues that the district court's error was harmless because the district court considered and rejected Mrs. Reed's departure motion based on

5

her age, health and sentencing disparity.  The government relies on a particular

passage, which it argues shows that the district court acknowledged that it had

discretion to depart downward, but refused to do so:

> I recognize the Court has discretion under certain circumstances to
> depart downward, and since this is not a situation which I fail to
> recognize that discretion, but I do not believe that this case is
> outside the heartland other than — what is truly an unusual fact
> that the defendant was some 64 years on age to 68 years of age
> during the time period that this activity took place. . . . [T]he age
> of the defendant here, although unusual, is not in my personal view
> so extreme and different as to take this outside what I would
> consider the heartland. . . . [T]he health of a defendant is not of
> such a degree that it is a factor that the Court would consider
> beyond the heartland.

ROA, Vol. I, Doc. 46 at 35–37.  The district court also went on to state that Mrs.

Reed's complaint of sentencing disparity was "not something which leads me to

believe that if there is disparity, it is outside the heartland . . . it is not something

that the drafters of the Guidelines didn't think it might happen." Id. at 39.

According to the government, these statements show that the district court would

not reduce Mrs. Reed's sentence on remand, thus rendering the error harmless.

The district court's repeated reference to the "heartland," however, controverts

the government's contention that it has met its burden of demonstrating that the

error was harmless beyond a reasonable doubt.

Before Booker, departures not specifically enumerated in the guidelines

were permissible only if they fell within the exception in § 3553(b), which stated

6

that the district court "shall impose a sentence" within the guidelines range unless "mitigating circumstances" existed that were "not adequately taken into consideration by the Sentencing Commission in formulating the guidelines." 18 U.S.C. § 3553(b). The district court could consider only the "sentencing guidelines, policy statements, and official commentary of the Sentencing Commission" in determining whether the Commission adequately accounted for a particular circumstance. Id.; see also U.S.S.G. § 5K2.0(a)(1). As the Supreme Court explained, a district court could depart without abusing its discretion if the case was "unusual enough for it to fall outside the heartland of cases in the Guideline" at issue, based on whether the Sentencing Commission had forbidden, encouraged, or discouraged consideration of certain relevant facts. Koon v. United States, 518 U.S. 81, 98–100 (1996). The Commission, however, had made clear that "such cases w[ould] be extremely rare." U.S.S.G. § 5K2.0 comment. Accordingly, we would reverse a district court's downward departure as an abuse of discretion if we concluded that the circumstances were not so "extraordinary" as to place the case outside the "heartland." See e.g., United States v. Reyes-Rodriguez, 344 F.3d 1071, 1075–76 (10th Cir. 2003). Moreover, our review of downward departures afforded district courts little deference with the enactment of the PROTECT Act, Pub.L. 108-21 (2003), in effect at the time of Mrs. Reed's sentencing, which raised the standard of review in sentencing

7

departure cases from a "unitary abuse of discretion standard" to application of a de novo standard of review. United States v. Jones, 332 F.3d 1294, 1299 (10th Cir.2003).

Booker, however, excised § 3553(b) and its narrow prescription for when departures are warranted, along with 18 U.S.C. § 3742(e), as amended by the PROTECT Act. See Booker, 125 S.Ct. at 764. District courts now "have more discretion to tailor sentences to individual circumstances of a defendant," looking to such factors articulated in 18 U.S.C. § 3553(a), which "have a new vitality" after Booker. United States v. Trujillo-Terrazas, 405 F.3d 814, 819 (10th Cir. 2005). Thus, the district court's denial of Mrs. Reed's motion for a downward departure because her health, age and disparate sentence did not distinguish her case from the "heartland" of cases covered by the guidelines is not only unsurprising given the legal landscape of the time, but it sheds no light on whether it might have granted the very same motion had it known that Booker establishes § 3553(a) as a primary point of reference and effectively allows greater latitude in making departure decisions. As we noted in Labastida-Segura,

> Here, where [the sentence imposed] was already at the bottom of the guidelines range, to say that the district court would have imposed the same sentence given the new legal landscape (even after consulting the Sentencing Guidelines in an advisory capacity) places us in the zone of speculation and conjecture — we simply do not know what the district court would have done after hearing from the parties. Though an appellate court may judge whether a district court exercised its discretion (and whether it abused that

8

discretion), it cannot exercise the district court's discretion.
396 F.3d at 1143. This case presents effectively the same uncertainties presented by Labastida-Segura.

As a final matter, we conclude this case is distinguishable from our recent decision in United States v. Ollson, 413 F.3d 1119 (10th Cir. 2005). In Ollson, we held that a non-constitutional Booker error (i.e., the application of the Sentencing Guidelines in a mandatory fashion) was harmless because the district court in that case granted the government's motion to reduce the defendant's sentence under U.S.S.G. § 5K1.1 for his substantial assistance in an investigation. In doing so, we noted that the district court had discretion under § 5K1.1 to depart to the degree it found appropriate, regardless of the specific recommendation of the government. Id. at 1121. We further emphasized there was "[n]othing in the record [to] overcome[] the presumption that the [district] court was aware of its discretion." Id. Here, in contrast, the record on appeal indicates that the district court believed its discretion to depart under § 5K1.1 was more limited. In particular, the district court stated: "I don't think that the 5K1.1 motion is simply opening the door to the judge and then saying, well, now I have the opportunity to impose whatever sentence I feel is appropriate." ROA, Vol. I, Doc. 46, at 34.

In sum, we conclude that the government has failed to show that the district court's error was harmless beyond a reasonable doubt.

9

**III.**

Accordingly, we REMAND the defendant's sentence to the district court with direction to VACATE defendant's sentence and resentence in light of Booker.

Entered for the Court


Mary Beck Briscoe
Circuit Judge